**BATH & BODY WORKS, INC., and Bathco, Inc., Plaintiffs–Appellants,**

v.

**LUZIER PERSONALIZED COSMETICS, INC., Defendant–Appellee.**

No. 94–3677.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 11, 1995.

Decided Feb. 22, 1996.

Michael W. Donaldson, Vorys, Sater, Seymour & Pease, Columbus, OH, Frank J. Colucci (argued and briefed), Colucci & Umans, New York City, for Bath & Body Works, Inc., Bathco, Inc.

Michael J. Kelly, Wiles, Doucher, Van Buren & Boyle, Columbus, OH, William A. Rudy, Thomas H. Van Hoozer (argued and briefed), Robert D. Hovey, Hovey, Williams, Timmons & Collins, Kansas City, MO, for Luzier Personalized Cosmetics, Inc.

Before KEITH, KENNEDY, and SILER, Circuit Judges.

SILER, Circuit Judge.

Plaintiffs, Bath & Body Works, Inc., and Bathco, Inc., (collectively "Bath & Body Works"), appeal the judgment on a jury verdict for the defendant, Luzier Personalized Cosmetics, Inc., in this action alleging trade dress infringement. Bath & Body Works claims that several evidentiary rulings and certain jury instructions were erroneous. For the reasons stated herein, we affirm the decision of the district court.

## I.

Since 1990, Bath & Body Works has been a nationwide retailer of personal care products. The business is a separate, wholly-owned subsidiary of The Limited, Inc. The trademark BATH & BODY WORKS is assigned to Bathco, Inc. Pursuant to a related company agreement with Bathco, Bath & Body Works is the exclusive user of the trademark, tradename and service mark "BATH & BODY WORKS." By 1994, there were 189 Bath & Body Works retail stores plus three BATH & BODY WORKS departments in Express stores (Express is a wholly owned subsidiary of The Limited) located in many principal cities throughout the United States.

Bath & Body Works stores and departments sell a wide range of personal care products such as gels, oils, lotions, creams, moisturizers, foams, shampoos and conditioners. In fiscal 1993 (February 1993 through January 1994), sales of Bath & Body Works' products exceeded $110 million. Additionally, it has expended in excess of $30 million on advertising and promotion of its products.

Luzier is a small, family owned and operated business based in Kansas City with about fifty employees. Although much smaller than Bath & Body Works, it is also a nationwide retailer of cosmetics and personal care

products. Luzier sells its products in several category lines, including lipsticks, face, hair and bath and body. Luzier began selling products in its bath and body category around 1970. Products in its bath and body category include shower gels, body lotions and moisture baths.

Luzier traditionally has sold its products through individual sales representatives who call on their customers directly. In those areas not serviced by Luzier representatives, sales have been generated through their catalogs by mail order. Luzier presently has two retail stores operating in the Kansas City area. In 1992, Luzier updated its line of personal care products and introduced the label that is at issue in this litigation. Luzier also began distributing its products to grocery and drug stores.

The products for both Bath & Body Works and Luzier are sold in transparent cylindrical bottles with rounded shoulders and dark green caps. Bath & Body Works' original bottles had a parchment label with dark green print. Sometime in 1992, Bath & Body Works began using a new label design with a sunrise above the words "Bath & Body Works" and a colored rectangle with a cut out of the product's flavor. The new labels were "screened" on certain products such as bath gels. Luzier's products, which also have a parchment label, have the words "Bath & Body" in cursive writing. Luzier's products have a colored square with a cut out of the flavor above the words "Bath & Body."

In March 1993, Bath & Body Works filed this action against Luzier, alleging trademark and trade dress infringement pursuant to §§ 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), common law trademark infringement, trade dress infringement, unfair competition and violations of the Ohio Deceptive Trade Practices Act. The initial complaint mentioned only Bath & Body Works' original label. Later, Bath & Body Works amended its complaint to include the new label ("second generation label").

Prior to trial, the district court granted Luzier's motion to exclude the introduction of any evidence pertaining to Bath & Body Works' claims regarding the modified or second generation trade dress. The court held that Bath & Body Works could present its claim on the second generation label in a bifurcated proceeding. At the conclusion of plaintiffs' case, it ruled that, as a matter of law, the words "bath and body" were generic and dismissed Bath & Body Works' claims of federal and common law trademark infringement. On June 20, 1994, the jury returned a verdict in favor of Luzier on the unfair competition claims. Bath & Body Works declined to proceed with the second phase of the trial on its claims of infringement of the second generation label.

## II.

Bath & Body Works sought to prove its case by introducing both its first and second generation labels. While the first label clearly predated Luzier's entrance into the market, both Bath & Body Works' second generation label and Luzier's product reached the market in 1992. The court ordered Bath & Body Works to produce documentation regarding when the second label was introduced, but Bath & Body Works stated that it had no documentation that would date the label. It asserted that the new label was considered a minor change, and, therefore, the product number (also called the "SKU" number) was not changed.

The district court conducted an evidentiary hearing on Luzier's motion in limine to exclude any evidence about the second generation label as a Rule 37 sanction. It found Luzier's request was timely and specific and the reasons offered by Bath & Body Works were not credible. The court found it incredible that a company with the expertise and resources of Bath & Body Works would not maintain documentation regarding such a change in the appearance in its product and in its labeling. It went on to find that the second generation trade dress more closely resembled Luzier's than the original and as Bath & Body Works was unable to establish that the second generation label was used prior to Luzier's use, it would be unduly prejudicial to allow introduction of any evidence regarding claims as to the second generation label. Consequently, the district court excluded Bath & Body Works' evidence

regarding the second generation trade dress. It based its ruling on three alternative grounds: (1) as a Rule 37 sanction for failure to comply with discovery, (2) as a grant of a motion in limine to suppress, and (3) as a reconsideration of its earlier ruling granting Bath & Body Works' motion to amend its complaint to include claims for infringement of their second generation trade dress. Ultimately, the district court held that it would bifurcate the trial and that Bath & Body Works could present the second generation trade dress claim after the jury had heard the first generation claim.

Each of the alternative rulings is reviewed for abuse of discretion. *Beil v. Lakewood Engineering & Mfg. Co.*, 15 F.3d 546, 551 (6th Cir.1994) (decision to impose sanctions under Rule 37 is reviewed for an abuse of discretion); *Zamlen v. City of Cleveland*, 906 F.2d 209, 215 (6th Cir.1990) (grant or denial of motion in limine to suppress evidence reviewed for a clear abuse of discretion), *cert. denied*, 499 U.S. 936, 111 S.Ct. 1388, 113 L.Ed.2d 444 (1991); and *In re Bendectin Litigation*, 857 F.2d 290, 307 (6th Cir.1988) (order of bifurcation is reviewed for a clear abuse of discretion), *cert. denied*, 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989). This court need not determine whether the district court's ruling under Rule 37 or its grant of a motion in limine was an abuse of discretion as its decision to bifurcate the trial and allow Bath & Body to present evidence of the second generation label at the second phase cures any error. Thus, the only issue here is whether the district court's decision to bifurcate was a clear abuse of discretion.

■ Rule 42(b) of the Federal Rules of Civil Procedure provides that in order to promote convenience and economy or avoid prejudice, a district court "may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue...." "The decision whether to try issues separately is within the sound discretion of the court...." *In re Bendectin*, 857 F.2d at 307. "It follows, therefore, that a decision to try an issue separately will be affirmed unless the potential for prejudice to the parties is such as to clearly demonstrate an abuse of discretion." *Id.* at 308.

■ Here, the district court determined that Luzier would be prejudiced if evidence regarding both labels was presented in the same trial. The district court found that Luzier's label resembled Bath & Body's second label much more than Bath & Body's first label. It also found that Bath & Body would not be prejudiced by a bifurcated trial as the essence of the trade dress claim did not turn on aspects of the label that had been changed. The trial regarding the second generation trade dress was to be tried before the same jury that heard the first generation trade dress claims. Thus, the jury would have been permitted to consider any evidence presented in the first phase. Further, Bath & Body Works' original complaint alleged violations involving only the first generation trade dress. Bath & Body Works' survey evidence was already divided according to first and second generation trade dress. Moreover, Bath & Body Works was allowed to introduce some of the precluded evidence regarding the second generation trade dress during the first phase in order to respond to Luzier's abandonment defense. Thus, under these circumstances, the district court did not abuse its discretion in bifurcating the trial.

Despite its claims to the contrary, Bath & Body Works did not object to the bifurcation. During the trial of the first generation trade dress, each time the court mentioned the bifurcation, Bath & Body Works failed to object. At the end of the trial of the first phase, the court recessed the jury to discuss with counsel plans for implementation of the next phase. Bath & Body Works did not object, but simply declined to proceed further, citing the jury's unfavorable verdict and the district court's previous rulings on several issues.

### III.

■ At the conclusion of the presentation of Bath & Body Works' case-in-chief, the district court granted Luzier's motion for a directed verdict and dismissed Bath & Body Works' claims of both federal and common law trademark infringement. It concluded that the words "Bath & Body" were generic

**748**

and, therefore, not cognizable as a trademark. Alternatively, the district court held that the words were so highly descriptive that they could not be a trademark; or, even if the words were descriptive, Bath & Body Works had failed to prove secondary meaning. The district court's ruling is reviewed according to that standard enunciated by this court in *Lewis v. City of Irvine*, 899 F.2d 451, 454–55 (6th Cir.1990) (citations omitted):

> "We review the granting of a directed verdict by the trial court under the same standard used by that court in determining whether or not it was appropriate to grant the motion." Thus, we must ascertain "'whether the evidence is such, without weighing the credibility of the witnesses or considering the weight of the evidence, that there is substantial evidence from which the jury could find in favor of the party against whom the motion is made.'" "'Only when it is clear that reasonable people could come to but one conclusion from the evidence should a court grant a motion for directed verdict.'"

■ "The existence and extent of trademark protection for a particular term depends on that term's inherent distinctiveness. Courts have identified four general categories of terms: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." *Blinded Veterans Ass'n. v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1039 (D.C.Cir. 1989). "A generic or common descriptive term is one which is commonly used as the name or description of a kind of goods. It cannot become a trademark under any circumstances." *Induct–O–Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir.1984). "A merely descriptive term specifically describes a characteristic or ingredient of an article. It can, by acquiring a secondary meaning, *i.e.*, becoming 'distinctive of the applicant's goods' ..., become a valid trademark." *Id.*

■ Whether a name is generic is a question of fact. J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 12.02[7][b] (3d ed.1992). If a trademark has been registered, there is a presumption that term is not generic and the defendant must overcome the presumption. *Id.* If a

trademark is not federally registered, once the defendant raises genericness as a defense, plaintiff must prove lack of genericness. *Id.*

Bath & Body Works registered "BATH & BODY WORKS" with the United States Patent and Trademark Office in December 1992. The Patent and Trademark Office deemed the words "Bath & Body" as descriptive. However, this characterization of "merely descriptive" does not constitute a finding by the Patent and Trademark Office. "The Patent and Trademark Office examining attorneys generally deny registration of allegedly generic terms by saying that they are 'descriptive' under § 2(e)." McCarthy § 12.18[1], at 120109. Thus, while such a characterization by the Patent and Trademark Office concedes at least merely descriptiveness, it does not constitute evidence that the Patent and Trademark Office has determined that the disclaimed words "Bath & Body" are merely descriptive but not generic nor commonly descriptive. Such a determination is to be made by the finder of fact.

■ The appropriate "test for genericness is whether the public perceives the term primarily as the designation of the article." *Blinded Veterans*, 872 F.2d at 1041. The district court found that the evidence was overwhelming in favor of a finding of genericness. However, the record reveals that there was sufficient evidence from which a jury could have found otherwise. Thus, the district court's finding of genericness as a matter of law was erroneous. However, this finding was harmless error, as Bath & Body Works stated repeatedly throughout the trial that it did not object to the use of the words "bath and body" in a descriptive context. Nor did it have any objection to the use of the words "bath and body" in combination with a trademark. Bath & Body Works' objection, as stated in both the original complaint and the amended complaint, was to the manner of use of the words "bath and body" by Luzier on its product as it contends that causes confusion among consumers. Specifically, counsel for Bath & Body Works stated:

> That is what I have been trying to argue in this case, that we have not been trying to preclude the defense from using the words

bath and body in ordinary words. We are—our argument has been from the very beginning, it is the manner in which they are using it in terms of the overall trade dress creates the appearance of a trademark.

As discussed later in this opinion, the jury instructions properly presented Bath & Body Works' claims of whether the trade dress (the manner in which Luzier used the words "bath and body") was properly presented to the jury. Thus, a determination of whether the words "bath and body" are generic was not relevant, as Bath & Body Works did not assert this claim.

## IV.

Bath & Body Works argues that the district court erred by preventing the jury from considering the words "Bath & Body" in conjunction with the trade dress claim. As Bath & Body Works failed to adequately preserve this claim, we review the instructions for plain error. *Woodbridge v. Dahlberg,* 954 F.2d 1231, 1237 (6th Cir.1992).

■ Federal Rule of Civil Procedure 51 provides that, "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." "The law in this circuit generally requires a formal objection, which should in most circumstances be made both before and after the jury instructions are read to the jury. An exception to this rule occurs *only* when it is plainly apparent from the discussion between the parties and the judge that the judge was aware of a party's dissatisfaction with the instruction, as read to the jury, and the specific basis for that claimed error or omission." *Preferred RX, Inc. v. American Prescription Plan, Inc.,* 46 F.3d 535, 547 (6th Cir.1995) (citing *Woodbridge v. Dahlberg,* 954 F.2d 1231, 1237 (6th Cir.1992)). The purpose of this rule is "to alert the trial judge to potential problem areas so that the jury can be ·clearly and correctly instructed." *Preferred Rx, Inc.,* 46 F.3d at 547 (citations omitted).

■ A review of the discussions regarding the jury instructions between the court and counsel reveals that Bath & Body Works failed to adequately preserve its objections. Prior to closing arguments, counsel met with the district judge in chambers to discuss the instructions. Counsel for both sides engaged in extensive discussion with the court regarding their respective positions. Bath & Body Works stated repeatedly that it wanted the jury to be instructed to consider the overall product appearance. Bath & Body Works stated that it was not claiming "trademark rights in the term 'bath & body' alone." In response to the court's decision to delete the last sentence of Bath & Body Works' proposed instruction, counsel for Bath & Body Works suggested:

> ... if we didn't have a trademark issue in this case, if we hadn't started with that and we just had words on the bottles, then clearly I think under 43(a), you would be looking at the word, term, name, symbol or device. That is where it gets a little bit confusing. We would not be arguing that we had any protected right to the use of those words, but just that those words versus their words and how they are displayed on the bottle would be one element of the trade dress that they should consider.
>
> . . .
>
> That is what I have been trying to argue in this case, that we have not been trying to preclude the defense from using the words bath and body in ordinary words. We are—our argument has been from the very beginning, it is the manner in which they are using it in terms of the overall trade dress creates the appearance of a trademark.

The district court then recessed to consider Bath & Body Works' position. Upon reconvening, it is apparent from its announced proposed instruction that the district court complied with Bath & Body Works' suggestions. Specifically, the district court stated (reading the proposed instructions):

> ... Although plaintiffs have no exclusive right to use the words "bath and body,"

you may consider the manner in which the defendant used those words on its product in determining likelihood—...—likelihood of confusion and defendant's intent. Manner of use refers to the style and presentation of the words, not their meaning.

And again, since we made some substantial changes in this instruction on likelihood of confusion, I would be happy to have any further comments that either side wishes to offer. Mr. Donaldson [Bath & Body Works' counsel]?

In response, Mr. Donaldson replied, "Your Honor, plaintiffs are satisfied with that. Thank you."

The district court then read the instructions to the jury and afterwards asked whether there were any objections thereto. Counsel for Bath & Body Works stated, "No, Your Honor. The only thing I did note is that we only have ten signature lines on each of these."

Given the discussions between counsel and the district court concerning the jury instructions, it is apparent that the district court was never made aware of the alleged error of which Bath & Body Works now complains. "The court's reasonable conclusion would have been that [the plaintiff was] satisfied with the instruction ultimately given. It was not made aware that an objection remained." *Woodbridge* 954 F.2d at 1236. Thus, the instruction is reviewed for plain error. The court properly instructed the jury to consider the trade dresses in their entirety according to applicable law, *Opryland USA, Inc. v. The Great American Music Show, Inc.*, 970 F.2d 847, 851 (Fed.Cir.1992), so there was no plain error.

### V.

■■ Bath & Body Works claims that the district court's exclusion of "shoppers" testimony and the admission of testimony from Luzier's president was erroneous. These rulings are reviewed for an abuse of discretion. *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir.1994). Fur-

ther, reversal is only warranted when the abuse of discretion results in more than harmless error. *Id.*

■ Bath & Body Works argues that the court improperly excluded testimony by "shoppers." These "shoppers" would have testified that when they asked sales clerks at stores selling Luzier's products, "My mother asked me to get her some Bath & Body Works, is this it?," the clerks replied, "yes." Bath & Body Works conducted this survey only a few days before the discovery cut-off, and did not inform Luzier of the survey until after the discovery cut-off date. The court found the testimony prejudicial because Luzier was not informed of the shoppers' testimony until after the discovery cut-off date, the clerks were not Luzier's employees, and the question could have been interpreted in different ways. The district court did, however, hold that Bath & Body Works could elicit testimony directly from the clerks, and did not preclude the use of the shoppers' testimony for impeachment purposes. Bath & Body Works then elected not to call any of the clerks, nor did it use any of the shoppers' testimony for impeachment purposes.

Federal Rule of Evidence 403 permits a district court to exclude evidence it deems more prejudicial than probative. The district court did not abuse its discretion in excluding the evidence. Further, as Bath & Body Works was permitted to call the clerks directly, no prejudice resulted.

■ Bath & Body Works also contends that the admission of testimony from Keith Craven, Luzier's president, was erroneous. Specifically, Bath & Body Works argues that Craven was permitted to testify about a legal conclusion regarding his understanding of Bath & Body Works' trademark, but that Bath & Body Works' president was not allowed to so testify. The record reveals that Craven was not permitted to testify about the legal significance of the disclaimer, but was merely allowed to read the disclaimer on a document. Thus, the district court did not abuse its discretion.

### VI.

All other claims of Bath & Body Works are without merit and the judgment of the district court is AFFIRMED.