**COLUMBIA GAS TRANSMISSION CORPORATION, Plaintiff–Appellee/Cross–Appellant,**

v.

**Andrew J. ZEIGLER, Defendant–Appellant/Cross–Appellee.**

Nos. 02–3164, 02–3220.

United States Court of Appeals, Sixth Circuit.

Nov. 18, 2003.

now pending under Sixth Circuit docket number 03–3016.

Brian L. Buzby, Porter, Wright, Morris & Arthur, Columbus, OH, Patricia A. Screen, Porter, Wright, Morris & Arthur, Cleveland, OH, Colleen E. Hicks, Columbia Gas Transmission Corp., Charleston, WV, for Plaintiff–Appellee/Cross–Appellant.

Andrew J. Zeigler, pro se, Lucas, OH, for Defendant–Appellant/Cross–Appellee.

Before MOORE and ROGERS, Circuit Judges, and FORESTER,* District Judge.

## OPINION

MOORE, Circuit Judge.

Defendant–Appellant Andrew Zeigler ("Zeigler") appeals the district court's determination that a fence erected by Zeigler on his property violated the terms of a lease with Columbia Gas Transmission Corporation ("Columbia"). Specifically, Zeigler asserts that the district court erred when it granted Columbia a 200–foot–radius setback around the natural gas storage well operated pursuant to the terms of the lease, and that it also erred in prohibiting the admission of certain evidence of other neighboring wells operated by Columbia under other leases. Columbia cross-appeals, asserting that because the district court found that Zeigler had slandered Columbia's title and granted judgment in its favor, it erred in declaring Columbia's damages *de minimis*, without permitting Columbia to present evidence of its damages in a post-trial proceeding. We hold that in light of the fact-specific nature of the case, the district court did not err when it granted a 200–foot–radius setback to Columbia, and that the decision to prohibit the admission of evidence of neighboring wells did not constitute an abuse of discretion. We also uphold the

---

* The Honorable Karl S. Forester, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

lower court's decision to deny Columbia's request for attorney fees. Therefore, we AFFIRM the district court's judgment.

## I. BACKGROUND

This diversity case[1] stems from the grant of an oil and gas lease ("Lease") by Fred and Mary Mengert to the Ohio Fuel Supply Company ("Ohio") on April 6, 1917, for the subject tract at issue. The lease allowed Ohio, the lessee, to drill, operate, and maintain a natural gas well on the Mengerts' land. The lease specifically stated that "[n]o well shall be drilled within 300 feet of the barn or dwelling house now on said premises." Joint Appendix ("J.A.") at 22. It further provided that any damage to growing crops caused by operations under the lease would be borne by the lessee. In 1936, pursuant to a Supplemental Agreement and an agreement authorizing the inclusion of additional acreage in the original lease,[2] additional rights were conveyed by the Mengerts to Ohio. Specifically, the Supplemental Agreement provided that the "[l]essee shall have the additional right from time to time to inject gas of any kind for storage in and under said lands ... to drill as it may elect, other wells thereon for such purpose, to remove such gas, together with the natural product of such well or wells therefrom, by such means as lessee may choose, and to install and maintain on said lands such additional equipment and *to do such other things as may be reasonably necessary and convenient for such purposes.*" J.A. at 24 (emphasis added).

Columbia is the successor-in-interest to Ohio and is the present owner and holder of the Lease Agreements. Zeigler purchased the subject tract in 1997, and is the successor-in-interest to the Mengerts, and is bound by the Lease Agreements.[3] In November 2000, Zeigler constructed an electric fence within 30 feet of the well, despite having previously been informed that he was not permitted to erect any encroachments within 300 feet of the well. Columbia promptly objected to the construction of the fence, and it then filed suit in the district court to compel the removal of the fence. However, while Columbia's action was pending, Zeigler notified Columbia that the Lease Agreements had been terminated because of the alleged failure of Columbia to pay the rent and to cover the cost of damage done to Zeigler's crops resulting from Columbia's use of the land. In January 2001, Zeigler filed an Affidavit of Forfeiture pursuant to Ohio Revised Code § 5301.332 with the Recorder's Office of Richland County, Ohio, which stated that the Lease Agreements had been terminated and forfeited. The Re-

---

1. Diversity of citizenship was based on the facts that Zeigler was a citizen of Ohio, Columbia's state of incorporation was Delaware, while its principal place of business was Virginia, and more than $75,000 was in controversy.

2. The Lease, Supplemental Agreement, and acreage agreement will hereinafter be referred to collectively as "Lease Agreements."

3. Zeigler argues that he is not bound by the Lease Agreements, stating that he did not have knowledge of them. However, the district court found that based on Zeigler's own testimony, he indeed possessed knowledge of the fact that a well was being operated on the land, because he had "conducted all necessary due diligence, reviewed all title documents and records on file with the [ ] County Recorder's Office and fully investigated whether any encumbrances ran with the Subject Tract prior to its purchase." Joint Appendix ("J.A.") at 90 (Dist. Ct. Findings of Fact & Conclusions of Law) (citing Zeigler Testimony). Zeigler further admitted during his testimony that he, having no gas or oil experience, failed to review the Lease Agreements with an attorney or at least some type of professional who would understand their full significance.

corder's Office proceeded to record Zeigler's Affidavit as a public record, and made a notation on Columbia's lease that it was canceled. Columbia asked Zeigler to withdraw the Affidavit, and when he refused, the company filed a Supplemental Complaint to assert a slander-of-title claim against Zeigler.

After a non-jury trial, the district court concluded that in order to provide Columbia with the freedom to exercise the rights afforded it under the Lease Agreements, it needed a "200 foot radius from the well free of any obstructions...." J.A. at 93–94 (Dist. Ct. Findings of Fact & Conclusions of Law). This conclusion was based in large part on the expert testimony of two key Columbia employees. Regarding Columbia's slander-of-title claim, although the district court found that Columbia had successfully pleaded the claim, the court stated that Columbia had failed to demonstrate actual or special damages resulting from Ziegler's slander of its title, and concluded that any additional legal fees incurred from asserting the slander claim were *de minimis*. Zeigler appeals the grant of the 200–foot–radius setback to Columbia, as well the district court's denial of admission of evidence regarding wells on neighboring properties. Columbia filed a timely cross-appeal regarding the denial of attorney fees.

## II. ANALYSIS

### A. Grant of 200–Foot–Radius Setback

This court reviews de novo a district court's interpretation of state law. *American Home Assurance Co. v. Hughes*, 310 F.3d 947, 949 (6th Cir.2002). A district court's factual findings should be upheld

unless clearly erroneous. *Schroyer v. Frankel*, 197 F.3d 1170, 1173 (6th Cir. 1999).

"Contract interpretation is a question of law and is subject to de novo review."[4] *Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 931 (6th Cir.1998) (quotation omitted). "Under Ohio law, the extent and limitations of an easement [created by express grant] are to be ascertained from the language of the grant and from the circumstances surrounding the transaction." *Swango Homes, Inc. v. Columbia Gas Transmission Corp.*, 806 F.Supp. 180, 186 (S.D.Ohio 1992). Common words that appear in leases are to be accorded "their plain and ordinary meaning." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146, 150 (Ohio 1978). "[W]here the terms in an existing [lease] are clear and unambiguous, [a] court cannot in effect create a new [lease] by finding an intent not expressed in the clear language employed by the parties." *Id.; accord Shifrin v. Forest City Enters., Inc.*, 64 Ohio St.3d 635, 597 N.E.2d 499, 501 (Ohio 1992).

■ Columbia insists upon a 300–foot–radius setback, in order to carry out its maintenance and other operations regarding the gas storage well. The original 1917 lease creating the easement does not specify the dimensions of the property that is subject to the easement, but rather gives a general description of the land involved and states that Columbia may "drill for, produce and market ... natural gas and ... cross as much of said lands as may be necessary or convenient to such operations." J.A. at 22 (Lease). The

---

4. For these purposes, the lease at issue which creates the easement is an agreement similar to a contract, and therefore will be treated as such. This approach has been taken by Ohio courts. *See, e.g., Alexander v. Buckeye Pipe*

*Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (Ohio 1978)(treating easement as contract for purposes of its construction). Furthermore, the terms "easement" and "lease" are used interchangeably in some of the caselaw.

lease expressly prohibits the lessee (Columbia) from drilling a well within 300 feet of the barn or house then located on the premises. However, the 1936 Supplemental Agreement specifically states that the "[l]essee shall have the additional right from time to time to inject gas of any kind for storage in and under said lands, ... and to install and maintain on said lands such additional equipment and *to do such other things as may be reasonably necessary and convenient for such purposes."* J.A. at 24 (Supplemental Agreement) (emphasis added). It appears that although neither the Lease nor the Supplemental Agreement specifically call for a 300–foot-radius setback, the broad language in the Supplemental Agreement provides Columbia with the right to call for a setback if it is "reasonably necessary and convenient" for the purpose of storing gas in the well on the subject land.

Furthermore, this case strikes us as particularly fact-sensitive. The following language from the district court opinion is especially relevant, as it demonstrates the district court's heavy reliance on the expert testimony presented by both parties in rendering its decision:

> Jeremiah Davis, Columbia's team leader for storage in the engineering and construction department, testified that the various maintenance and safety functions Columbia would have to perform on the well would require a 300–foot radius around the well free of any obstructions [ ]. Edward Haas, team leader of land services for Columbia, testified that Columbia would negotiate with landowners over the well setback distance based upon plans submitted to Columbia, but under no circumstances

would agree to less than 200 feet. Zeigler's expert, Michael Whims, testified that in his opinion the setbacks needed for required safety and maintenance functions would vary, but that a 300–foot setback would not be required; he testified that certain types of maintenance functions might need a 100–foot setback. Considering the training, education, experience and credibility of the witnesses, the Court finds that Columbia needs a 200 foot radius from the well free of any obstructions in order to exercise the rights given to it by the Lease Agreements.

J.A. at 93–94 (Dist. Ct. Findings of Fact & Conclusions of Law). It cannot be said that the district court committed clear error in its fact finding, and we therefore affirm its decision to grant a 200–foot-radius setback in Columbia's favor.[5]

### B. Exclusion of Evidence of Wells on Neighboring Properties

A district court's ruling that excludes evidence is reviewed for an abuse of discretion. *Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.,* 76 F.3d 743, 750 (6th Cir.1996). A trial judge's decision is to be accorded "great latitude." *Rye v. Black & Decker Mfg. Co.,* 889 F.2d 100, 101–02 (6th Cir.1989). "A strong showing of abuse is required for us to disturb the [d]istrict [c]ourt's judgment." *Id.* at 102 (quotation omitted). "[R]eversal is only warranted when the abuse of discretion results in more than harmless error." *Bath & Body Works,* 76 F.3d at 750.

The district court excluded evidence offered by Zeigler during trial of three gas storage wells on neighboring properties. Zeigler asserted that the three wells had

---

**5.** Zeigler argues that the district court decision created a new contract, alleging that the judge inserted new language into the existing Lease Agreements. However, this argument is misplaced, for all that the district court did was to interpret the meaning of the words used in the Lease Agreements, in light of the expert testimony presented by both sides.

encroachments within a 200–foot radius of the wellhead and that therefore this demonstrated that Columbia's claim that it needed 300 feet was not true. Columbia objected to the introduction of the evidence, arguing that its admission would violate the district court's pretrial order, which required the disclosure of all exhibits *at least ten days* before trial. The district court agreed and refused to admit the evidence.

"The Civil Rules endow trial judges with formidable case-management authority.... In exercising this power, '[t]rial judges enjoy great latitude,' and a litigant who ignores a case-management deadline does so at his peril." *Rosario–Diaz v. Gonzalez,* 140 F.3d 312, 315 (1st Cir.1998)(quotation omitted). *See also* Fed.R.Civ.P. 16(f). District court judges may penalize such non-compliance in myriad ways. *Rosario–Diaz,* 140 F.3d at 315. Many courts sanction parties who attempt to introduce evidence (exhibits or oral testimony) not disclosed pursuant to a pretrial order, by refusing to admit such evidence in its entirety. *See, e.g., United States v. Lummi Indian Tribe,* 841 F.2d 317, 320 (9th Cir.1988)("trial judge may exclude evidence not identified in accordance with the pretrial order when the party seeking to introduce the evidence offers no justification for delay"); *Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322, 1335 (8th Cir.1985)(a party is not permitted to offer evidence at trial that violates terms of pretrial order); *Lirette v. Popich Bros. Water Transp., Inc.,* 660 F.2d 142, 144–45 (5th Cir.1981)(excluding witness testimony because witness not listed in pretrial order). A pretrial order can be modified by the trial court "only if there is no substantial injury or prejudice to the opponent." *Hale,* 756 F.2d at 1335.

▉ Zeigler failed to list this evidence on the exhibit list he filed pursuant to the pretrial order. Columbia would have suffered prejudice had the district court permitted the admission of the evidence concerning the neighboring wells, as Zeigler's intent to introduce such evidence had not properly been disclosed, and hence Columbia had no knowledge of it and had not prepared for its introduction at trial. Further, it appears that Zeigler did not produce any reasonable explanation for his failure to place this evidence on his exhibit list, pursuant to the mandate of the pretrial order. In light of these facts and relevant caselaw, the district court did not abuse its discretion in deciding to deny the admission of this evidence.

### C. Columbia's Slander–of–Title Claim

"Slander of title is a tort action which may be 'brought against any one who falsely and maliciously defames the property, either real or personal, of another, and thereby causes him some special pecuniary damage or loss.'" *Green v. Lemarr,* 139 Ohio App.3d 414, 744 N.E.2d 212, 224 (Ohio Ct.App.2000)(quoting *Buehrer v. Provident Mut. Life Ins. Co. of Philadelphia,* 37 Ohio App. 250, 174 N.E. 597, 599 (Ohio Ct.App.1930), *aff'd,* 123 Ohio St. 264, 175 N.E. 25 (Ohio 1931)). To succeed on such a claim, "a claimant must prove '(1) there was a publication of a slanderous statement disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages.'" *Id.* at 224, 175 N.E. 25 (quotation omitted). A successful plaintiff may recover attorney fees incurred in removing the cloud on the title as "special damages." *Id.* at 227–28, 175 N.E. 25. Additionally, a successful plaintiff may recover attorney fees incurred in prosecuting a slander-of-title action, but only in a case involving bad faith on the part of the defendant. *Id.*

■ The district court concluded that Zeigler, having no legitimate grounds on which to terminate the lease, had slandered Columbia's title by filing an Affidavit of Forfeiture with the County Recorder's Office. However, the court denied recovery of attorney fees because it found that Columbia failed to prove that it suffered actual or special damages as a result of the slander. Specifically, the court found that because Columbia had already filed suit to have the fence removed. any additional fees incurred in adding the slander-of-title claim were *de minimis*. We cannot say that the district court clearly erred in its decision to deny attorney fees.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.