*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0157p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

―――――――――

T. MARZETTI COMPANY,
          *Plaintiff-Appellant,*

          *v.*

ROSKAM BAKING COMPANY,
                    *Defendant-Appellee.*

No. 10-3784

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 09-00584—Algenon L. Marbley, District Judge.

Argued: November 30, 2011

Decided and Filed:  May 25, 2012

Before:  DAUGHTREY, MOORE, and McKEAGUE, Circuit Judges.

―――――――――

**COUNSEL**

―――――――――

**ARGUED:** Brian J. Downey, FROST BROWN TODD LLC, Columbus, Ohio, for
Appellant. Matthew J. Gipson, PRICE, HENEVELD, COOPER, DEWITT & LITTON,
LLP, Grand Rapids, Michigan, for Appellee.  **ON BRIEF:** Brian J. Downey, FROST
BROWN TODD LLC, Columbus, Ohio, Matthew C. Blickensderfer, FROST BROWN
TODD LLC, Cincinnati, Ohio, for Appellant.  Matthew J. Gipson, Steven L.
Underwood, Jason L. Budd, PRICE, HENEVELD, COOPER, DEWITT & LITTON,
LLP, Grand Rapids, Michigan, Alycia N. Broz, VORYS, SATER, SEYMOUR and
PEASE, LLP, Columbus, Ohio, for Appellee.

―――――――――

**OPINION**

―――――――――

MARTHA CRAIG DAUGHTREY, Circuit Judge.  In this action for trademark
infringement under section 43(a), 15 U.S.C. § 1125(a), plaintiff T. Marzetti Company
appeals the judgment of the district court in favor of defendant Roskam Baking
Company.  The alleged infringement involved Roskam's use of the mark "Texas Toast"

1

on its packaged croutons. Marzetti contended that the term "Texas Toast" is a protectable mark and that Roskam's use created a likelihood of confusion among consumers. Roskam responded that, because the terminology is generic when describing a type of crouton, the mark "Texas Toast" is not entitled to trademark protection. After a bench trial,[1] the district court determined that "Texas Toast" is, in fact, generic when applied to croutons. Moreover, the district court held that even if "Texas Toast" were considered a protectable mark, Roskam's use did not create a likelihood of confusion among consumers. We agree with the court's decision on the generic quality of the mark and, therefore, find it unnecessary to discuss likelihood of confusion. We therefore affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The evidence in the record indicates that Marzetti, an Ohio corporation, sells salad dressings, frozen garlic bread, noodles, vegetable dips, apple dips, mustard, and croutons. Roskam, a Michigan corporation, sells breads, caramel corn, candy bars, chocolate bars, doughnuts – and croutons. Marzetti and Roskam thus compete in the retail crouton business; in fact, Marzetti croutons and Roskam croutons are sold side-by-side in many food stores. Evidence at trial established that Texas toast is a large, square, thickly-sliced loaf of bread that has been baked in homes and sold commercially for many years. Marzetti, Walmart, Meijer, Pepperidge Farms, and several other brands currently produce frozen Texas toast, which is sold side-by-side in the freezer section of retail stores. Marzetti sells its frozen Texas toast under the housemark "New York Brand the Original Texas Toast." Although Marzetti began selling frozen garlic bread in 1995, it has never tried to register "Texas Toast" and "The Original Texas Toast" as trademarks or taken legal action against its competitors over marks applied to bread.

---

[1]The district court conducted a four-day bench trial, heard live testimony from eight witnesses, examined the deposition testimony of three additional witnesses, and considered 60 pages of post-trial briefs and approximately 140 pages of proposed findings of fact and conclusions of law. Much of the evidence concerned the issue of likelihood of confusion, leading to what we conclude was a correct ruling by the district court on this question, although we find it unnecessary to address the issue in view of our ultimate conclusion that the district court was also correct in ruling that the trademark in this case is not entitled to protection under the Lanham Act.

Hoping to tie the success of its "New York Brand the Original Texas Toast" frozen bread to its crouton products, Marzetti began selling croutons under that name in 2007 and, at the time of trial, offered five different varieties of "New York Brand the Original Texas Toast" croutons. Marzetti's Texas toast croutons are not necessarily larger than other Marzetti brand croutons, although the "Texas Toast" packages contain only the two largest sizes of croutons produced by the company. The croutons are not made from actual Texas toast, but their packaging promises consumers "a bigger bite" and a "Texas Toast cut." The packaging also states that the croutons are made by cutting loaves of bread into "Texas-Sized bites." According to the record, "Texas-Sized" is intended to convey the expectation of a larger crouton.

Eight months after introducing the "Texas Toast" croutons, Marzetti conducted a consumer awareness survey. The results showed that none of the 675 individuals surveyed had unaided awareness of the "New York Brand The Original Texas Toast" croutons. In other words, when prompted to identify crouton brands, not one person identified Marzetti's "New York Brand the Original Texas Toast." Only 11 percent of consumers surveyed had aided awareness. This survey is the only data available to measure consumer awareness, and Marzetti used and relied upon the data gathered.

In 2007, Cameron Roskam, a management-level employee at Roskam, saw Marzetti's "Texas Toast" croutons at a grocery store and suggested that the company develop and market a similar product under their existing Rothbury Farms brand name. Each of the eight types of croutons sold by Roskam carried the Rothbury Farms logo in the same size and same gold-colored font. Below the logo were words describing the type of crouton contained in the package, such as "Cheese Garlic," "Italian Style," or "Fat Free," in large white font. The font style for the words "Texas Toast" was similar to that of the other types of Rothbury Farms croutons. The evidence indicated that Roskam used the term "Texas Toast" to convey to consumers something about the size of the croutons; the words were not intended as a brand name. The label "Texas Toast" on Roskam's packages looks substantially different from the words "Original Texas Toast" on Marzetti's packages.

In February 2009, Marzetti filed two trademark applications with the United States Patent and Trademark Office. The first application sought to register "Texas Toast" for use on croutons and tortilla strips. The second application sought to register "The Original Texas Toast" in connection with croutons and tortilla strips. The Patent Office denied both trademark applications because of the potential likelihood of confusion with the mark Texas toast for bakery goods. Marzetti submitted responses to the decisions, and the Patent Office examiner withdrew the refusals to both applications in November 2009. The Patent Office completed its final review of the "Texas Toast" and "The Original Texas Toast" trademark applications and approved them for publication, finding them to be, at a minimum, suggestive.[2] Both marks were published for opposition, and Roskam filed oppositions to the trademark applications in July, 2010.

In its internal documents, Marzetti has referred to its "Texas Toast" croutons as simply "the New York croutons," and in its 2008 annual report it indicated that "New York Brand" is one of its registered brands and that "Texas Toast croutons" is one of its products. On the packages for Marzetti's "Texas Toast" products, which include frozen bread and croutons, the words "Texas Toast" and "The Original Texas Toast" always appear with the registered housemark "New York Brand." Witnesses for Marzetti could not cite any instances of actual confusion between Marzetti's "Texas Toast" croutons and Roskam's "Texas Toast" croutons.

After becoming aware of the Rothbury Farms "Texas Toast" croutons, Marzetti contacted Roskam through counsel and demanded that Roskam "immediately and forever cease and desist any and all use of TEXAS TOAST for croutons and other salad toppings, or any other name confusingly similar to TEXAS TOAST." When Roskam continued producing the croutons, Marzetti brought suit in federal court, alleging the following five causes of action: (1) violation of section 43(a) of the Lanham Act; (2) violation of the Ohio Uniform Deceptive Trade Practices Act; (3) a common-law

___

[2] Marzetti argues that this court should give deference to the patent office's approval, but only a mark that has been registered on the Principal Register is entitled to a presumption of validity. *See* 15. U.S.C. § 1057(b). When the patent office examiner has not considered all of the evidence before the district court, we need not give any weight to the examiner's decision. *See Mktg. Displays, Inc. v. TrafFix Devices, Inc.*, 200 F.3d 929, 934 (6th Cir. 1999), *rev'd on other grounds*, 532 U.S. 23 (2001).

trademark infringement claim; (4) a common-law unfair competition claim; and (5) a common-law dilution claim. Roskam filed an amended answer with counterclaims, seeking a declaratory judgment of non-violation regarding all of Marzetti's claims and an order finding Marzetti in violation of common-law unfair competition. Roskam also sought an award for damages and other relief. Prior to trial, Marzetti voluntarily dropped the common-law dilution claim and, at trial, Roskam agreed not to seek a declaratory judgment on its claim for dilution.

After conducting a bench trial, the district court held: (1) the mark "Texas Toast" is generic as applied to croutons; therefore, the mark does not qualify for trademark protection; and (2) Roskam's use of the words "Texas Toast" in the marketing of its croutons does not create a likelihood of confusion. The court also held that Marzetti had not engaged in unfair competition, and that Roskam was not entitled to damages or other relief. The district court entered judgment in favor of Roskam granting: a declaratory judgment of non-violation of section 43(a) of the Lanham Act; a declaratory judgment of non-violation of the Ohio Uniform Deceptive Trade Practices Act; a declaratory judgment of non-infringement of common-law trademark; and a declaratory judgment of non-violation under common-law of unfair competition. The plaintiff filed this timely appeal.

## DISCUSSION

In an appeal from a judgment entered after a bench trial, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. *See Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 547 (6th Cir. 2010). Mixed questions of law and fact are also subject to *de novo* review. *See Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 358 (6th Cir. 2007). "A finding of fact will only be clearly erroneous when, although there may be some evidence to support the finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Darwich*, 337 F.3d 645, 663 (6th Cir. 2003) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). "If the district court's account of the evidence is plausible in light of the entire record, this court

may not reverse that accounting, even if convinced that, had it been sitting as trier of fact, it would have weighed the evidence differently." *Harlamert v. World Finer Foods, Inc.*, 489 F.3d 767, 771 (6th Cir. 2007) (citing *Anderson*, 470 U.S. at 574-75). "This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." *Anderson*, 470 U.S. at 574.

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), creates a "federal cause of action for infringement of marks and trade dress that have not obtained federal registration." *Tumblebus v. Cranmer*, 399 F.3d 754, 760-61 (6th Cir. 2005). "When evaluating a Lanham Act claim for infringement of an unregistered mark, courts must determine whether the mark is protectable, and if so, whether there is a likelihood of confusion as a result of the would-be infringer's use of the mark." *Id.* at 761. Obviously, if the mark is not protectable, our inquiry ends there. *See Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 512-13 (6th Cir. 2007) (requiring that, in order to receive protection under federal law, a plaintiff must first demonstrate possession of a protectable mark.)

The district court determined that the mark "Texas Toast" was generic and, thus, not protectable. Whether a mark is generic is a question of fact, reviewed for clear error. *See Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743, 748 (6th Cir. 1996). Because the mark in this case was not federally registered and because Roskam raised "genericness" as a defense, it was Marzetti's burden to prove that the mark at issue was, in fact, not generic. *See id*.

As the district court acknowledged, trademark protection "is determined by where the mark falls along the established spectrum of distinctiveness." *DeGidio v. West Group Corp.*, 355 F.3d 506, 510 (6th Cir. 2004) (internal citations omitted). Marks are classified in the following categories of increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *See generally Tumblebus*, 399 F.3d at 761-62 (defining the five levels of distinctiveness). "A generic term is the weakest type of mark . . . and cannot become a trademark under any circumstances."

*Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111 (6th Cir. 1996). "[T]he test for whether a term is generic and therefore ineligible for trademark protection is 'whether the public perceives the term primarily as the designation of the article.'" *Gen. Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 413 (6th Cir. 2010) (quoting *Bath & Body Works*, 76 F.3d at 748). "If a mark is primarily associated with a type of product rather than with the producer, it is generic." *Natron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 404 (6th Cir. 2002). The district court held that, because it "has come to mean a bread product that is larger than normal, including sliced bread, frozen garlic bread, or croutons," the term "Texas Toast" is generic. We conclude that this determination is fully supported by the record.

Witness testimony established that Texas toast is commonly understood to describe a large bread product, not a producer of bread products. Marzetti acknowledged that Roskam and other companies selling Texas toast frozen bread and garlic bread use the designation generically. Indeed, Marzetti itself invokes the generic use of Texas toast, to the extent that the back of its crouton packages refers to "bigger bites" and "Texas-Sized bites." Documents in the record show that restaurants, recipes, and internet sites frequently use the term Texas toast to describe a type of crouton. Additionally, Marzetti's FY 2008 Annual Report referred to Texas toast croutons as a type of product, not a brand, and Marzetti's consumer awareness survey revealed that the relevant public did not identify Texas toast as a brand of croutons. Because the district court's determination that "Texas Toast" is a generic designation when applied to croutons is "plausible in light of the entire record," we find no basis on which to overturn it.

Finally, we address Marzetti's allegation that the district court "failed to apply the proper test to determine whether 'Texas Toast' is generic for croutons." That issue presents a question of law, one that would require *de novo* review. In the context of this appeal, however, it appears to be an effort to circumvent the clearly-erroneous standard that, under Sixth Circuit precedent, we apply to the district court's factual determination of "genericness." Moreover, Marzetti would require a strict application of the "primary

significance test," which is used in some circuits and requires a two-step analysis: a determination, first, of the "genus" of the product at issue and, second, the primary significance of the mark at issue to the relevant public when used in the genus of products. *See*, *e.g.*, *E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 192 (3d Cir. 2008). However, Sixth Circuit precedent does not require rigid adherence to the primary significance test. *See Bath & Body Works*, 76 F.3d at 748 (stating that the "test for genericness is whether the public perceives the term primarily as the designation of the article"). As noted above, the district court properly applied the law of this circuit, and the evidence supports the court's conclusion that the term "Texas Toast" is primarily associated with a type of product rather than the producer.

Moreover, the district court's discussion clearly indicates that it defined the "genus" as Texas toast and determined that the parties' products were "species." The court found that the "primary association of the public [was] that 'Texas Toast' conveys something about size." As a result, the district court's holding that the term "Texas Toast" is generic for certain bread products, including sliced bread, frozen garlic bread, and croutons, can be upheld under both the primary significance test and the test normally used in this circuit.

## CONCLUSION

Because the plaintiff must establish both a protectable mark and a likelihood of confusion in order to prevail in an infringement action, and because we have concluded that the mark in this case is not protectable, we need not address the likelihood of confusion. We therefore AFFIRM the district court's judgment in favor of defendant Roskam Baking Company.