NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0224n.06

No. 17-6066

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| JUSTIN SLUSHER, | ) | **FILED**<br>Apr 30, 2018<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Plaintiff-Appellant, | ) |  |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| UNITED STATES POSTAL SERVICE, | ) | COURT FOR THE EASTERN |
|  | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellee. | ) |  |
|  | ) |  |
|  | ) |  |

Before: GIBBONS, BUSH, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Justin Slusher sued the United States Postal Service, claiming it had interfered with his Family and Medical Leave Act (FMLA) rights, retaliated against him for taking FMLA leave, and constructively discharged him. After a bench trial, the district court found for USPS on all claims. Slusher appeals that decision, arguing that the district court erred in finding that he had not established his retaliation claim. We affirm.

I.

Slusher began working for the United States Postal Service in 1994. In 2011, Slusher became the manager of customer services at the Dixie Branch office, which was a permanent, level-20 position. Elaine Huhn was Slusher's direct supervisor while he held that position. While Slusher was at the Dixie Branch, employees filed two grievances against him alleging that he had created a hostile work environment. The first grievance was filed by one employee, and

the second was filed jointly by twenty-nine employees. USPS resolved the first grievance without disciplining Slusher. Two USPS administrative managers investigated the second grievance.

While the second grievance was pending, USPS assigned Slusher to a temporary detail as officer in charge of the Batavia Branch office, a level-21 position. While working at that branch, Slusher went on leave from May 30 until August 10, 2014. He emailed Brandy Seanor, his supervisor at the Batavia Branch, on May 30 to tell her that he "w[ould] be off until further notice pending seeing a doctor." He attached a form requesting sick leave beginning May 30 with no specified end date. Later that day, Slusher separately submitted a request for FMLA leave, which was processed by the USPS FMLA office in Greensboro, North Carolina. That office approved all but the last week of Slusher's leave under the FMLA.

On June 30, the managers investigating the second grievance reported their findings. Deborah O'Neal, the USPS human resources administrator, asked for an outside group to perform an additional investigation. On August 7, after discussions with O'Neal and David Caproni, the executive plant manager at the Cincinnati Processing and Distribution Center, Edward Harants, the area's senior operations manager, called and emailed Slusher to tell him to report to the Cincinnati plant beginning on August 11 because he was being temporarily reassigned to work there as an operations support specialist, a level-17 position. Because that was a temporary position, USPS continued to pay Slusher a level-20 salary. Slusher reported to the plant as instructed and, in October, accepted a voluntary downgrade to a level-17 position as the supervisor of transportation operations at the facility.

Meanwhile, in November, USPS concluded its review of the second Dixie Branch grievance. USPS issued Slusher a warning letter regarding his workplace conduct but did not

suspend him. Slusher initially appealed the letter, but he resigned from USPS and began working for DHL in February 2015, before USPS heard his appeal.

Slusher then sued USPS. He alleged that USPS had interfered with his FMLA rights by not approving his final week of leave, had retaliated against him for taking FMLA leave by demoting him to the level-17 position at the plant, and had created conditions that constructively discharged him.

After a bench trial, the district court found that USPS had not interfered with Slusher's rights by failing to approve his request for FMLA leave for August 4 through 8 because Slusher had not provided the required documentation for that period. The district court also found that Slusher had not proved his retaliation claim because he had not shown that "the employees who took action in his case knew of his FMLA leave." The district court also said that, even assuming Slusher had shown that the employees who made the decision knew about his FMLA leave, Slusher had failed to show that USPS took adverse action against him by placing him on temporary detail to a level-17 position but continuing to pay him as a level-20 employee. Furthermore, the district court said that the retaliation claim failed because, even assuming the employees knew of his leave and took adverse action against him, Slusher had not shown that USPS's justification for the temporary assignment and the disciplinary letter—the grievances filed against Slusher at Dixie Branch—was a pretext for discriminating against him for taking FMLA leave. Finally, the district court said that Slusher's constructive discharge claim failed because he had not proved "that he was subjected to intolerable working conditions before

leaving." On appeal, Slusher challenges only the district court's findings related to his retaliation claim.[1]

## II.

To establish an FMLA retaliation claim, Slusher must show that: (1) he was engaged in FMLA-protected activity; (2) his employer knew that he was exercising his FMLA rights; (3) he suffered an adverse employment action; and (4) "there was a causal connection between the protected FMLA activity and the adverse employment action." *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006). The district court found, and neither party contests, that Slusher's approved FMLA leave from May 30 to August 3, 2014, was statutorily protected activity. Slusher contests the district court's finding that he did not show the remaining elements of his claim.

Slusher argues that the district court erred in finding that his employer did not know he was exercising his FMLA rights when it took the allegedly adverse action of temporarily reassigning him to the Cincinnati plant. Because that is a factual question, we review the district court's finding for clear error. Fed. R. Civ. P. 52(a); *Hoffman v. Prof'l Med Team*, 394 F.3d 414, 417 (6th Cir. 2005). The district court commits clear error when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574.

---

[1] In his reply brief, Slusher attempts to revive his FMLA interference claim, arguing that, even if the decisionmakers were not aware of his FMLA status, that would not defeat his FMLA interference claim, which does not require any showing of motive. In his opening brief, however, Slusher challenged only the retaliation claim; he cannot raise an issue related to his interference claim for the first time in his reply brief. *See Eagle Supply & Mfg., L.P. v. Bechtel Jacobs Co.*, 868 F.3d 423, 429 n.1 (6th Cir. 2017).

"[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Id.* at 575. We review any legal conclusions de novo. *T. Marzetti Co. v. Roskam Baking Co.*, 680 F.3d 629, 633 (6th Cir. 2012).

Slusher's claim fails. Although Slusher notes that USPS had institutional knowledge of his FMLA status, Slusher had to prove that the decisionmakers involved in the determination to temporarily transfer him to the Cincinnati plant had knowledge of his FMLA status. *Mulhall v. Ashcroft*, 287 F.3d 543, 551–52 (6th Cir. 2002); *see Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 482 (6th Cir. 2008).[2] He failed to do so.

The district court found that O'Neal, Caproni, and Harants made the decision to temporarily reassign Slusher. Slusher makes no argument that either O'Neal or Caproni knew of his status. Slusher alleges that he told Harants that he was on FMLA leave over the phone and in writing. The district court, however, credited Harants's testimony that he did not know about Slusher's status until *after* he had informed Slusher on August 7 that Slusher was being temporarily reassigned to the level-17 position at the Cincinnati plant. And Slusher's only documentary proof—an email Slusher sent to Harants that mentioned Slusher's "certified FMLA case"—was sent on August 7 *after* Harants had called and emailed Slusher to notify him of the temporary reassignment.[3] Slusher essentially asks this Court to believe his testimony over

---

[2] Although these cases arise under Title VII, rather than under the FMLA, "[w]e have often relied on Title VII precedent to analyze FMLA retaliation claims." *Hunter v. Valley View Local Sch.*, 579 F.3d 688, 691 (6th Cir. 2009).

[3] When Harants sent Slusher the disciplinary letter in November, Harants did know about Slusher's FMLA leave. But Slusher makes no argument on appeal that the letter constituted an adverse employment action. Instead, Slusher argues only that the temporary reassignment to the

Harants's, but "[our] function is not to decide factual issues *de novo*." *Anderson*, 470 U.S. at 573 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123 (1969)). Instead, we owe great deference to the trial court's factual determinations, particularly when they rest on its assessment of the credibility of witnesses. *Id.* at 574–75.

Slusher also asserts that Seanor and Huhn knew of his FMLA leave. But, regardless of the conflicting testimony regarding their knowledge, Slusher makes only a conclusory assertion, with no record support, that the two women were involved in the decision to temporarily reassign him to the Cincinnati plant. That is not sufficient for us to find that the district court, which heard the witnesses and considered the evidence, clearly erred in finding that they were not among the decisionmakers.

The district court determined that Slusher had failed to show that the USPS employees who made the allegedly adverse decision to temporarily reassign him to the Cincinnati plant knew about his FMLA leave when they made that decision. We cannot say that this determination was clearly erroneous.[4] Slusher's FMLA retaliation claim, therefore, fails.

\* \* \*

We affirm the district court's judgment.

---

level-17 position was a retaliatory adverse employment action, so Harants's knowledge when he made that decision is the only fact relevant to our inquiry.

[4] We need not and do not, therefore, reach the other two arguments that Slusher raises on appeal regarding his retaliation claim.