RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0095p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

COMMONWEALTH OF KENTUCKY
COMMERCIAL MOBILE RADIO SERVICE
EMERGENCY TELECOMMUNICATIONS BOARD,
     *Plaintiff-Appellee/Cross-Appellant*,

    *v.*

TRACFONE WIRELESS, INC.
    *Defendant-Appellant/Cross-Appellee*.

Nos. 11-6215/6300

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 3:08-cv-660—John G. Heyburn, II, District Judge.

Argued: October 12, 2012

Decided and Filed: April 5, 2013

Before: KEITH, MARTIN, and ROGERS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** E. Joshua Rosenkranz, ORRICK, HERRINGTON & SUTCLIFFE LLP, New York, New York, for Appellant/Cross-Appellee. Jonathan David Goldberg, GOLDBERG & SIMPSON, Prospect, Kentucky, for Appellee/Cross-Appellant. **ON BRIEF:** E. Joshua Rosenkranz, ORRICK, HERRINGTON & SUTCLIFFE LLP, New York, New York, Sheryl G. Snyder, Thomas Patrick O'Brien, III, Cory J. Skolnick, FROST BROWN TODD LLC, Louisville, Kentucky, for Appellant/Cross-Appellee. Jonathan David Goldberg, Jan M. West, Jennifer K. Luhrs, GOLDBERG & SIMPSON, Prospect, Kentucky, for Appellee/Cross-Appellant. Mark Allen Loyd, John K. Bush, BINGHAM GREENEBAUM DOLL, Louisville, Kentucky, for Amicus Curiae.

---

**OPINION**

---

DAMON J. KEITH, Circuit Judge.   This appeal involves a dispute between TracFone Wireless, Inc. ("TracFone")—which provides prepaid wireless phone service primarily through third-party retailers—and the Commercial Mobile Radio Service Emergency Telecommunications Board ("CMRS Board" or "the Board")—an entity created by the Kentucky General Assembly to develop an emergency 911 system for wireless customers in Kentucky.  The Board initiated this suit to collect unpaid fees from TracFone.  The parties dispute the applicability and interpretation of a Kentucky statute and its amendments which require wireless phone providers to collect emergency 911 fees on behalf of the Commonwealth of Kentucky.  The district court ruled in favor of the Board with respect to the interpretation of the statute and amendments but declined to award the Board prejudgment interest on TracFone's unpaid fees.  TracFone appeals the district court's decisions as to the applicability and interpretation of the statute and the amendments.  The Board cross-appeals the district court's denial of an award of prejudgment interest on the unpaid fees.  For the reasons that follow, we **AFFIRM** the district court's judgment.

*FACTUAL BACKGROUND*

This case involves the applicability of a Kentucky statutory scheme to the prepaid wireless phone service provider, TracFone.  Wireless phone services are typically billed one of two ways, using either a prepaid or a postpaid system.  Postpaid billing is the traditional way wireless phone companies collect fees.  With a postpaid billing method, the customer enters into an agreement to pay a specific price for a specific amount of minutes each month.  The customer receives a monthly bill for the services she used during the preceding month.  If the customer uses more minutes than she originally thought she would, there is an additional charge that is applied to the bill.  With a prepaid billing method, on the other hand, the customer pays in advance for a

specific number of minutes to be used. Typically a prepaid service user does not receive a monthly bill and cannot use additional minutes unless she pays for them in advance.

TracFone provides a national prepaid wireless service. It does not have its own calling network. It purchases the right to use other companies' networks. In turn, it sells prepaid minutes on those networks. TracFone sells most of its services through third-party retailers. A typical customer would go to a store like Wal-Mart, buy a phone, and then contact TracFone to activate the phone and the prepaid minutes. When a customer contacts TracFone for activation, the customer provides her zip code. Following activation, TracFone does not monitor the use of the service or the amount of minutes used. If a customer runs out of minutes, she can go to a third-party retailer and buy a new calling card to load minutes onto the phone.

The statutory scheme at issue was created in response to a mandate from the Federal Communications Commission (FCC) to ensure that wireless phone users have access to emergency 911 services. *See generally In re Revision of the Comm'n Rules to Ensure Compatability with Enhanced 911 Emergency Calling Sys.*, 11 FCC Rcd. 18,676 (1996). The 1996 FCC Order sought to allow any wireless phone user to have access to enhanced 911 services. The enhanced service allows a phone user to dial 911 from her cell phone and be connected to the emergency dispatch system that is closest to her actual location at the time of the call, independent of her home address.

*The CMRS Act of 1998*

In 1998 the Kentucky General Assembly enacted the CMRS Act, codified in the Kentucky Revised Statutes §§ 65.7621–7643, to develop the Commonwealth's enhanced wireless 911 service. The 1998 CMRS Act created the CMRS Fund to pay for the creation and maintenance of the 911 system. The 1998 Act imposed a monthly seventy-cent fee on all wireless customers. The statute, KRS § 65.7635 required wireless providers to collect that fee from their customers and remit the money to the CRMS Board. The statutory language stated:

(1) Each CMRS provider shall act as a collection agent for the CMRS fund and shall, as part of the provider's normal monthly billing process, collect the CMRS service charges levied upon CMRS connections under KRS 65.7629(3) from each CMRS connection to whom the billing provider provides CMRS. Each billing provider shall list the CMRS service charge as a separate entry on each bill which includes a CMRS service charge. If a CMRS provider receives a partial payment for a monthly bill from a CMRS customer, the provider shall first apply the payment against the amount the CMRS customer owes the CMRS provider.

(2) A CMRS provider has no obligation to take any legal action to enforce the collection of the CMRS service charges for which any CMRS customer is billed. Collection actions to enforce the collection of the CMRS service charge against any CMRS customer may, however, be initiated by the state, on behalf of the board, in the Circuit Court of the county where the bill for CMRS service is regularly delivered, and the reasonable costs and attorneys' fees which are incurred in connection with any such collection action may be awarded by the court to the prevailing party in the action.

(3) State and local taxes shall not apply to CMRS service charges.

(4) To reimburse itself for the cost of collecting and remitting the CMRS service charge, each CMRS provider may deduct and retain from the CMRS service charges it collects during each calendar month an amount not to exceed one and one-half percent (1.5%) of the gross aggregate amount of CMRS service charges it collected that month.

(5) All CMRS service charges imposed under KRS 65.7621 to 65.7643 collected by each CMRS provider, less the administrative fee described in subsection (4) of this section, are due and payable to the board monthly and shall be remitted on or before sixty (60) days after the end of the calendar month. Collection actions may be initiated by the state, on behalf of the board, in the Franklin Circuit Court or any other court of competent jurisdiction, and the reasonable costs and attorneys' fees which are incurred in connection with any such collection action may be awarded by the court to the prevailing party in the action.

KRS § 65.7635 (1999).

In 1999, TracFone began selling its services in Kentucky. TracFone remitted the 911 service fees to the CMRS Board from the time it brought its business to Kentucky, until November 2003. In November 2003, TracFone notified the Board that it would no

longer remit the fees, in part because another state had interpreted a similar statute as inapplicable to prepaid providers. The Board insisted that TracFone was required to remit the fees.

*The 2006 Amendments*

In 2004, the Board began lobbying the legislature to clarify the statute's method for fee collection. In 2006, the Kentucky legislature passed amendments ("2006 Amendments") to the CMRS Act. The amended statutory language now reads as follows:

> (1) Each CMRS provider shall act as a collection agent for the CMRS fund. From its customers, the provider shall, as part of the provider's billing process, collect the CMRS service charges levied upon CMRS connections under KRS 65.7629(3) from each CMRS connection to whom the billing provider provides CMRS. Each billing provider shall list the CMRS service charge as a separate entry on each bill which includes a CMRS service charge. If a CMRS provider receives a partial payment for a monthly bill from a CMRS customer, the provider shall first apply the payment against the amount the CMRS customer owes the CMRS provider. For CMRS customers who purchase CMRS services on a prepaid basis, the CMRS service charge shall be determined according to one (1) of the following methodologies as elected by the CMRS provider:
>
> > (a)    The CMRS provider shall collect, on a monthly basis, the CMRS service charge specified in KRS 65.7629(3) from each active customer whose account balance is equal to or greater than the amount of service charge; or
> >
> > (b)    The CMRS provider shall divide its total earned prepaid wireless telephone revenue received with respect to its prepaid customers in the Commonwealth within the monthly 911 emergency telephone service reporting period by fifty dollars ($50), multiply the quotient by the service charge amount, and pay the resulting amount to the board; or
> >
> > (c)    In the case of CMRS providers that do not have the ability to access or debit end user accounts, and do not have retail contact with the end-user or purchaser of prepaid wireless airtime, the CMRS service charge and

collection methodology may be determined by administrative regulations promulgated by the board to collect the service charge from such end users.

(2) A CMRS provider has no obligation to take any legal action to enforce the collection of the CMRS service charges for which any CMRS customer is billed. Collection actions to enforce the collection of the CMRS service charge against any CMRS customer may, however, be initiated by the state, on behalf of the board, in the Circuit Court of the county where the bill for CMRS service is regularly delivered, and the reasonable costs and attorneys' fees which are incurred in connection with any such collection action may be awarded by the court to the prevailing party in the action.

(3) State and local taxes shall not apply to CMRS service charges.

(4) To reimburse itself for the cost of collecting and remitting the CMRS service charge, each CMRS provider may deduct and retain from the CMRS service charges it collects during each calendar month an amount not to exceed one and one-half percent (1.5%) of the gross aggregate amount of CMRS service charges it collected that month.

(5) All CMRS service charges imposed under KRS 65.7621 to 65.7643 collected by each CMRS provider, less the administrative fee described in subsection (4) of this section, are due and payable to the board monthly and shall be remitted on or before sixty (60) days after the end of the calendar month. Collection actions may be initiated by the state, on behalf of the board, in the Franklin Circuit Court or any other court of competent jurisdiction, and the reasonable costs and attorneys' fees which are incurred in connection with any such collection action may be awarded by the court to the prevailing party in the action.

KRS § 65.7635 (2007).

In light of the clarification regarding prepaid providers, TracFone elected "Option C" as its collection method. TracFone requested an administrative rule that would allow the retailer to collect the fee on its phones. TracFone's request was denied.[1] Prior to the present suit, TracFone did not remit any fees under the 2006 Amendments. However, once the suit was filed, TracFone began remitting fees for its

---

[1] The Board did not respond to TracFone's request for a promulgation until the middle of the litigation in the district court—following the district court's August 18, 2010 Memorandum Opinion and prior to the district court's July 1, 2011 Memorandum Opinion.

customers who purchase services directly from TracFone. It did not pay fees for customers who purchased through third-party retailers. TracFone is the only prepaid provider that has refused to remit fees under the 2006 Amendments.

### PROCEDURAL BACKGROUND

On October 14, 2008, the CMRS Board filed suit against TracFone in the Jefferson County Circuit Court of Kentucky to recover unpaid enhanced 911 fees. TracFone removed the case to the Western District of Kentucky on December 18, 2008 and filed a counterclaim against the Board seeking reimbursement for the funds it paid to the Board prior to November 2003. The parties filed two sets of cross-motions for summary judgment, upon which the court ruled. There are three district court opinions upon which this appeal is grounded.

On August 18, 2010, the district court issued a Memorandum Opinion concluding that the 1998 Act was applicable to prepaid providers. It also ruled that the Board owed TracFone a response as to the method of collection under the 2006 amendments pursuant to its selection of Option C. In response to the district court's order, the Board notified TracFone that it would not be issuing a promulgation under Option C of the 2006 amendments and advised TracFone that it was to collect fees under Option A instead.

On July 1, 2011, the district court issued a second Memorandum Opinion, finding that the Board acted in its discretion when declining to issue a promulgation under Option C and that TracFone had the authority granted by the 2006 Amendments to select either Option A or B following the Board's denial. The district court also ruled that TracFone was liable for fees under the 2006 Amendments from the effective date of the amendments.

On September 8, 2011, the district court entered a third Memorandum Opinon and final judgment in the case. In the final opinion, the district court ordered that the Board was entitled to unpaid fees. TracFone was also ordered to pay the prevailing party—the Board—attorney fees, and costs, but the district court denied the Board's

request for prejudgment interest on the unremitted fees. The timely cross-appeals in this case followed.

## *STANDARD OF REVIEW*

We review an order granting summary judgment *de novo*, construing the evidence and drawing all reasonable inferences in favor of the non-moving party. *Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir. 1997). Summary judgment is proper if, after viewing the evidence that way, there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); Fed. R. Civ. P. 56(a). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

For questions concerning an award of prejudgment interest, the district court's award is reviewed for an abuse of discretion. *Poundstone v. Patriot Coal Co.*, 485 F.3d 891, 895 (6th Cir. 2007). "As applied to pre[-]judgment interest, a district court abuses its discretion if it declines to award prejudgment interest that is mandatory under state law." *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 328 (6th Cir. 2011).

## *DISCUSSION*

This case involves TracFone's appeal of the district court's interpretation of the 1998 CMRS Act and its 2006 Amendments, as well as the Board's appeal of the district court's order denying an award of prejudgment interest for the fees owed by TracFone.

When sitting in diversity, federal courts are required to apply the substantive law of the states in which they reside. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). On questions of state law, this Court is bound by the rulings of the state supreme court. *Bradley v. Gen. Motors Corp.*, 512 F.2d 602, 604–05 (6th Cir. 1975). "When there is no state law construing a state statute, a federal court must predict how the state's highest court would interpret the statute." *United States v. Simpson*, 520 F.3d 531, 535 (6th Cir. 2008). In the absence of any state supreme court precedent, a state's appellate

court decisions are the best authority.  *Id*. at 536.  Kentucky state law controls this action.

     *A.*      *1998 Act*

     TracFone appeals the district court's interpretation of the 1998 Act as applying to prepaid wireless phone providers.  TracFone argues that, contrary to the district court's findings, the plain language of the statute does not apply to it.  Upon *de novo* review, we hold that the 1998 Act applies to TracFone and other prepaid providers.

     The interpretation of the 1998 Act is purely a state law issue.  The Kentucky Supreme Court has not yet interpreted this statute.  The Kentucky Court of Appeals, however, has considered the application of the 1998 Act to prepaid providers, in *Virgin Mobile USA, L.P. v. Commonwealth ex rel. CMRS Board*, --- S.W.3d ---, Nos. 2010-CA-001185-MR & 2010-CA-001266-MR, 2012 WL 2470136 (Ky. Ct. App. Jun. 29, 2012), *reh'g denied*, Aug. 23, 2012.  Thus, this case provides the best predictive insight regarding the 1998 Act.**[2]**

     "We must begin by analyzing the plain language of statute."  *Commonwealth v. Derringer*,  386 S.W.3d 123, 127 (Ky. 2012).  "One of the fundamental maxims of statutory construction is that an act is to be read as a whole."  *Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet*, 133 S.W.3d 456, 465 (Ky. 2004) (internal citations and quotations omitted).

     The statutory text that is in dispute with respect to the 1998 Act states:

> Each CMRS provider shall act as a collection agent for the CMRS fund and shall, as part of the provider's normal monthly billing process, collect the CMRS service charges levied upon CMRS connections under KRS 65.7629(3) from each CMRS connection to whom the billing

---

    **[2]**The Kentucky Court of Appeals has noted that its decision in *Virgin Mobile* is slated for publication, but its holding is still under consideration in the Kentucky courts.  The appellants in *Virgin Mobile* filed a motion for discretionary review to the Supreme Court of Kentucky on September 24, 2012, and it remains under consideration as of the date of publication of this opinion.  While the Kentucky Court of Appeals opinion is not binding on this Court, it is persuasive authority we consider.  *United States v. Simpson*, 520 F.3d 531, 535 (6th Cir. 2008).

provider provides CMRS. Each billing provider shall list the CMRS service charge as a separate entry on each bill which includes a CMRS service charge. If a CMRS provider receives a partial payment for a monthly bill from a CMRS customer, the provider shall first apply the payment against the amount the CMRS customer owes the CMRS provider.

KRS § 65.7635(1). TracFone attacks the applicability of the statute on many fronts—each of which is addressed below.

It is undisputed that the 1998 Act applies to "CMRS providers." TracFone, however, argues that it is not a "CMRS provider" within the meaning of the statute. TracFone argues that the language stating that a "CMRS provider shall act as a collection agent for the CMRS fund" should be interpreted as requiring the fee to be collected by the person who sells the service to the end user. TracFone would like this Court to interpret the third-party retailer to be the "CMRS provider." There is no basis for such an interpretation.

The 1998 Act defines a "CMRS provider" as a "person or entity who provides CMRS to an end user, including resellers." KRS § 65.7621(9) (1999). TracFone is unquestionably a "CMRS provider" within the meaning of the statute and pursuant to Kentucky law. All parties agree that the end user is the customer who uses the phone service. While the retailer acts as a middleman, it cannot be said that a retailer is the "provider" of the service. As the district court noted, a customer who purchases a TracFone product contacts TracFone to activate the service, and TracFone supplies the coverage. TracFone is the company that provides such service to the end user, "whether those services are purchased directly from [TracFone] or through a third-party retailer and then subsequently activated by [TracFone]." *Virgin Mobile*, 2012 WL 2470136, at *10. Such an interpretation of the plain language of the statute is supported by the purpose of the 1998 Act, which was to comply with the FCC's mandate that all wireless phone users have access to enhanced 911 service. There is no indication that the mandate was intended to exclude customers that subscribe to prepaid services.

Despite the clear language of the statute that all CMRS providers "shall" collect the service charge, TracFone contests the applicability of the statute on the basis that it does not have a "monthly billing process," as mentioned in the statute. TracFone concludes that the 1998 Act, therefore, does not apply to prepaid providers, like itself. The statutory language at issue with respect to the billing method is as follows:

> Each CMRS provider . . . shall, as part of the provider's normal monthly billing process, collect the CMRS service charges levied upon CMRS connections under KRS 65.7629(3) from each CMRS connection to whom the billing provider provides CMRS.

KRS § 65.7635(1).

TracFone is correct that the statute speaks to a possible collection method through a traditional billing system. Nevertheless, the mandate that each CMRS provider collect fees is not diminished based on the mention of a billing method. While the billing language offers one possible method, there is no indication that the billing language has a limiting effect in applicability to CMRS providers. The statute clearly applies to "each CMRS provider." In no part of the statute is there an indication that prepaid CMRS providers were intended to be treated differently than postpaid CMRS providers. It is not the responsibility of the legislature to contemplate all of the possible billing methods of CMRS providers to collect the fee when it has made a clear directive that the statute applies to all providers equally. While TracFone's argument is well-intended, there is no ambiguity in understanding all CMRS providers shall collect the fee.

TracFone's final argument is that the 2006 amendments, which specifically added language regarding prepaid providers, is evidence that the 1998 Act was never intended to apply to prepaid providers. Contrary to TracFone's argument, prepaid providers have been required to collect the fees since the passage of the 1998 Act. As noted by the district court, the amended language regarding prepaid providers simply changed the fee collection method included in the statute. It did not change the requirement that all CMRS providers collect the enhanced 911 fee. Both versions of the

statute—the 1998 Act and the 2006 amendments—state that "[e]ach CMRS provider shall act as a collection agent for the CMRS fund." TracFone continues to be a "CMRS provider" under both versions of the statute. Therefore, the "general obligation of all CMRS providers to collect fees remained unchanged." *Commonwealth of Kentucky Commercial Mobile Radio Serv. Emergency Telecomms. Bd. v. TracFone Wireless*, 735 F.Supp.2d 713, 724 (W.D. Ky. 2010).

Much of TracFone's appeal hinges on its argument that the 1998 statute is ambiguous and that it is too difficult to comply with the statute. We are not persuaded by such arguments. First, we do not find any ambiguity in the statute as to the 1998 Act's applicability to TracFone. To the extent that TracFone argues difficulty in collecting the fees, we are unpersuaded considering the fact that TracFone had collected and paid the fees until 2003. Because the plain language of the 1998 Act required that all CMRS providers pay the enhanced 911 fees and because TracFone is a CMRS provider, the 1998 Act requires TracFone to collect the service fees from its Kentucky customers.

### B.    *2006 Amendments*

In 2006, the Kentucky Legislature amended the 1998 Act in order to clarify the method by which prepaid providers are required to collect emergency service fees. *See* KRS § 65.7635 (2007). The amended statute provided collection methods for prepaid service providers, which are "elected by the CMRS provider." It also allowed a possible custom collection method if the Board exercised its discretion to issue an administrative regulation ("Option C"). *Id.* TracFone argues on appeal that it was not obligated to pay fees following the 2006 Amendments until the Board issued regulations authorized by the amended statute in Option C. We disagree. Not only was TracFone obligated to pay the fees, but it was obligated to do so starting on the effective date of the amendments.

The revised statute provided possible fee collection methods for prepaid service providers, as elected by the CMRS provider:

[Option A]       The CMRS provider shall collect, on a monthly basis, the CMRS service charge specified in KRS 65.7629(3) from each active customer whose account balance is equal to or greater than the amount of service charge; or

[Option B]       The CMRS provider shall divide its total earned prepaid wireless telephone revenue received with respect to its prepaid customers in the Commonwealth within the monthly 911 emergency telephone service reporting period by fifty dollars ($50), multiply the quotient by the service charge amount, and pay the resulting amount to the board; or

[Option C]       In the case of CMRS providers that do not have the ability to access or debit end user accounts, and do not have retail contact with the end-user or purchaser of prepaid wireless airtime, the CMRS service charge and collection methodology may be determined by administrative regulations promulgated by the board to collect the service charge from such end users.

*Id.* Following the passage of the 2006 amendments, TracFone chose Option C as its collection method. The Board denied TracFone's request for promulgation of a regulation under Option C. TracFone ultimately selected Option B as its collection method.[3]

The district court held that TracFone was required to remit fees from the effective date of the statute, regardless of what method it chose. TracFone's argument on appeal is that it was not required to collect the fees until the Board informed it of the collection method under Option C—the option TracFone chose initially.

The district court was correct that TracFone was required to remit fees to the Board for the period beginning with the enactment of the 2006 amendments. The district court concluded that TracFone had the ability to select Option C immediately after the Act's passage. While we agree with the district court's conclusion that the TracFone is

---

[3]Initially the Board declined to promulgate a regulation under Option C and ordered TracFone to collect the fees pursuant to Option A's methodology. TracFone, instead, chose Option B—a choice that was upheld by the district court. On appeal, the Board does not take issue with TracFone's election of Option B.

required to remit fees from the effective date of the 2006 Amendments, we do not agree that Option C was a selectable option.

The amendments indeed gave providers a choice of methodologies for collection; there were, however, only two possible choices—Option A or Option B. The statutory language in Options A and B clearly use the word "shall" to refer to the fee collection methodology to be used by a CMRS provider. KRS § 65.7635. Option A states that the "CMRS provider shall collect . . . ." Option B states that the "CMRS provider shall divide . . . ." *Id.* This language mandates the CMRS provider to act. Option C, on the other hand, permits the Board, in its discretion, to act. The statute does not state that the Board "shall" promulgate a regulation; it states that "the CMRS service charge and collection methodology *may* be determined by administrative regulations." *Id.* Because Option C had no methodology attached, this "option" was not then—and is not now—a methodology choice available to providers.

The permissive language in Option C that the fee "*may* be determined by administrative regulations promulgated by the board . . . .," does not impose a requirement on the Board. Ky. Rev. Stat. Ann. § 65.7635. The Board chose not to create a collection methodology even when TracFone requested one. Without the Board exercising its discretion to promulgate a regulation, there is no collection methodology contained in Option C as it is written. It was within the Board's discretion to decide to issue or decline to issue a regulation upon TracFone's request. The Board did not act contrary to the statute's requirements nor to the legislature's intent in opting not to issue Option C rules or regulations, and TracFone is, therefore, liable for service fees owed from the effective date of the 2006 Amendments.

If TracFone had a duty to collect under the 1998 Act, which provided no useful guidance as to how to collect the service fees, it certainly had a duty to collect fees under the 2006 amendments, which offered new, more viable options for straightforward compliance. It would be absurd to hold that the statute—which was intended to close the "loophole" that had previously benefitted TracFone—*for the first time* excused

TracFone from its duty to collect. *See Exec. Branch Ethics Comm'n v. Stephens*, 92 S.W.3d 69, 73 (Ky. 2002) ("If there is any doubt from the language used by the legislature as to the intent and purpose of the law, then courts in interpreting the statute should avoid a construction which would be unreasonable and absurd in preference to one which is reasonable, rational, sensible and intelligent.").

Despite the fact that the statute unambiguously applied to TracFone and that TracFone and its customers have benefitted from the enhanced 911 services, TracFone argues that it should not have to pay the fees it has owed since the effective date of the 2006 amendments. TracFone attempts to frame the order to pay as an impermissible retroactive application of a statute. We reject such a characterization. A statute is applicable to regulated parties beginning at its effective date—not at the moment a party is ordered to comply with its unmet obligations thereunder. Because TracFone was undoubtedly on notice that it had a duty to collect fees under the 2006 Amendments, it is responsible for remitting those fees now to the Board.

For the foregoing reasons, the district court's judgment as to the award of fees owed under the 2006 amendments is affirmed, as is the award of attorneys' fees to the Board. *See* Ky. Rev. Stat. Ann. § 65.7635(5) (allowing an award of attorneys' fees to the prevailing party in a collection action under the CMRS Act). The CMRS Board was entitled to attorneys' fees as the prevailing party in the litigation; therefore, the district court did not abuse its discretion in awarding the fees. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008) (reviewing an order granting attorneys' fees for an abuse of discretion).

C.      *Prejudgment Interest*

The CMRS Board appeals the district court's order denying prejudgment interest on damages owed as a result of TracFone's failure to remit 911 service charges. Because the district court has not abused its discretion, we affirm the district court's judgment.

The Board argues that the district court erred in two ways. First, the Board argues that the fees owed by TracFone were liquidated, or for a definite amount, and under Kentucky law, if an amount is liquidated, a party is entitled to prejudgment interest as a matter of law. *Nucor Corp. v. Gen. Elec. Co.*, 812 S.W.2d 136, 141 (Ky. 1991) ("When damages are 'liquidated,' prejudgment interest follows as a matter of course."). The district court held that neither the pre-2006 nor post-2006 fees were "liquidated." We agree.

The district court correctly reasoned that the method of calculating the fees under the 1998 Act has always been in doubt, citing its August 18, 2010 Memorandum Opinion about the applicability of the 1998 Act to TracFone as evidence of the dispute. The district court also reasoned that the fees under the 2006 Amendments were similarly unliquidated because the proper collection method—which would have determined the exact fee due—was not identified until the district court's final judgment. In fact, each of the collection methods available would have resulted in a different fee amount. The district court, therefore, did not abuse its discretion in finding that the fees owed were unliquidated.

The Board's alternative argument is that the district court abused its discretion by failing to award prejudgment interest for equitable reasons. Kentucky courts rarely award prejudgment interest on unliquidated claims on equitable grounds. *See Meridian Citizens Mut. Ins. Co. v. Horton*, No. 5:08-CV-302-KKC, 2010 WL 1253084, at *9 (W.D. Ky. Mar. 25, 2010). Courts consider a variety of relevant factors when determining whether to grant prejudgment interest on equitable grounds. They routinely deny prejudgment interest where the defendant "in good faith, disputed its liability." *Owensboro Mercy Health Sys. v. Payne*, 24 S.W.3d 675, 679 (Ky. Ct. App. 2000); *see also Meridian Citizens*, 2010 WL 1253084, at *9 (finding that "allegations of bad faith are often involved" in the rare cases where prejudgment interest is granted for unliquidated claims). Here, the district court determined that TracFone had "reasonable grounds for believing that its actions were reasonable." We agree. The district court acted within its discretion in denying the award of interest.

## *CONCLUSION*

For the foregoing reasons, we **AFFIRM** Judge Heyburn's judgment.