<u>NOT RECOMMENDED FOR PUBLICATION</u>
File Name: 20a0188n.06

Nos. 19-5641/5696

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 02, 2020
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| LAURA NELSON, | ) |
| Plaintiff-Appellant/Cross-Appellee, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE EASTERN |
| | ) DISTRICT OF KENTUCKY |
| COLUMBIA GAS TRANSMISSION, LLC., | ) |
| Defendant-Appellee/Cross-Appellant, | ) |
| | ) OPINION |
| MICHELS CORPORATION, | ) |
| Defendant-Appellee. | ) |

Before: MOORE, KETHLEDGE, and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** Columbia Gas Transmission, LLC obtained an easement to construct a natural gas pipeline on Laura Nelson's farm in Bracken County, Kentucky. When all was said and done, Nelson maintained that the area impacted by the construction was not restored "as near as practical to its original condition," as required by the construction license contract. Nelson sued Columbia Gas and a subcontractor, Michels Corporation, for breach of contract. The district court bifurcated Michels from the trial and entered summary judgment in its favor. Nelson then proceeded to trial against Columbia, obtaining $50,000 in damages arising from the breach of contract, and $150,000 in damages for emotional distress. The district court denied Nelson's motion for a new trial, and denied Columbia's motion for judgment as a matter of law on the emotional distress damages. Nelson and Columbia filed cross appeals. For the

reasons stated below, we **REVERSE** the district court's denial of Columbia's motion for judgment as a matter of law as to the emotional distress damages and **AFFIRM** as to all other issues.

## I.

Columbia Gas Transmission is in the business of building natural gas transmission pipelines throughout the eastern United States. In order to construct those pipelines, they request permission from the Federal Energy Regulatory Commission ("FERC"). FERC then permits transmission companies to build the pipelines. Generally, companies like Columbia obtain easements and rights of way through private property by way of voluntary agreement of property owners. Other times, the company initiates condemnation actions pursuant to the Natural Gas Act. *See* 15 U.S.C. § 717f(h). The former was the case here. In 2014, Columbia approached Laura Nelson about acquiring an additional easement[1] across a parcel of her farm in Bracken County, Kentucky. After lengthy and tense negotiations, Nelson granted Columbia an easement to construct the pipeline on the west side of her property. As a condition of that contract, Columbia promised to restore the area disturbed by construction to a condition "as near as practical to its original condition." R. 110-15 at PageID 1986.

Although the pipeline was successfully constructed, not all went as planned. Nelson was unhappy with the state in which her farm was left at the conclusion of the project. According to Nelson, her horse pasture was ruined, felled trees were left to rot, wood chips that were sprayed on her property killed plant life, her septic tank was destroyed, and her fences were torn asunder. Because topsoil was not returned to the work area, she claimed, the area did not revegetate, and the pasture was strewn with tree stumps and rocks.

---

[1] Columbia had an existing easement over the eastern side of her property, but to avoid crossing over existing pipelines, and pursuant to the application it submitted to FERC, Columbia sought to build the pipeline on the west side of Nelson's property. R. 293-2 at PageID 12859.

Nelson filed suit in Kentucky state court against Columbia and the subcontractor that performed the wood chipping, Michels Corporation. She alleged, among other things, breach of contract, negligence, and emotional distress. The action was removed to the United States District Court for the Eastern District of Kentucky. During discovery, Nelson moved for sanctions against Columbia for allegedly concealing documents and providing misleading and false admissions. The magistrate judge recommended that sanctions not be imposed, and the district court adopted that recommendation. After discovery, the district court granted Columbia's motion for summary judgment as to Nelson's intentional infliction of emotional distress claim.

Ninety days before trial, Nelson moved for leave to file a fourth amended complaint to add a fraud claim against Columbia based on its alleged concealing of a pipeline variation showing that the pipeline could have been constructed on the other side of her property, and that Columbia knew that the land affected by the easement likely could not be revegetated. The district court denied the motion as futile. The district court then bifurcated Michels from trial, leaving Columbia as the sole defendant and breach of contract as the sole remaining claim.

The district court conducted an eight-day jury trial on the breach of contract issue. More than a dozen witnesses testified. In the end, the jury found that Columbia had breached its promise to restore the farm to as near as practical to its original condition, and awarded Nelson $50,000 in compensatory damages. The jury further awarded Nelson $150,000 in damages for emotional distress. The parties filed various post-trial motions. The district court denied Columbia's motion for judgment as a matter of law in which Columbia argued that emotional distress damages are not available for breach of contract. The district court also denied Nelson's motion for a new trial on damages, and granted Michels's renewed motion for summary judgment.

On appeal, Nelson advances five arguments. First, she argues that the district court erred in denying her motion for a new trial as to damages. Second, she argues that the district court erred in denying her motion to file a fourth amended complaint to add a fraud claim against Columbia. Third, she argues that the district court erred in instructing the jury on the law of eminent domain. Fourth, she maintains that the district court erred in bifurcating Michels's trial and subsequently granting summary judgment in favor of Michels. Finally, she contends that the district court erred in not awarding discovery sanctions against Columbia. Columbia advances one argument on appeal: that the district court erred in denying its motion for judgment as a matter of law as to emotional distress damages arising from a breach of contract. We address each argument in turn.

## II.

In her motion for a new trial as to damages, Nelson presented evidence that the total cost of restoring her property would be $2,056,461. The jury awarded her $50,000. We conclude that the district court did not abuse its discretion when it denied Nelson's motion.

We review a district court's denial of a motion for a new trial under Federal Rule of Civil Procedure 59(a) for abuse of discretion. *Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 880 F.3d 791, 798–99 (6th Cir. 2018). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law." *Norfolk Southern Ry. Co. v. Allied Erecting & Dismantling Co., Inc.*, 775 F. App'x 178, 186 (6th Cir. 2019) (quoting *United States v. Arny*, 831 F.3d 725, 730 (6th Cir. 2016). A district court has not abused its discretion unless we are left with "a definite and firm conviction that the trial court committed a clear error of judgment." *Anchor v. O'Toole*, 94 F.3d 1014, 1021 (6th Cir. 1996)

"The remedy of a new trial for inadequate damages is appropriate only where the evidence indicates that the jury awarded damages in an amount substantially less than *unquestionably* proven by the plaintiff's *uncontradicted and undisputed* evidence. Thus, if the verdict is supported by some competent, credible evidence, a trial court will be deemed not to have abused its discretion in denying [a] motion" for a new trial as to damages. *Anchor*, 94 F.3d at 1021 (emphasis in original).

Although Columbia did not enter any alternative measure of damages into evidence, we cannot say that the damages were substantially less than Nelson "unquestionably prove[d] by . . . uncontradicted and undisputed evidence." *Id.* Nelson's expert, Brian Stegman, estimated that it would cost $2,056,461 to restore 15.29 acres of land. Of that estimate, $1,744,418 was to replace the topsoil on the property. Stegman testified that it would be necessary to put a topsoil cover in order to restore and revegetate the property. However, Columbia's expert, Jeffrey Schultz testified that he did not believe that topsoil was necessary to revegetate the work zone. The jury was instructed to determine the credibility of each witness. Following that instruction, the jury could have given more weight to Schultz's testimony than Stegman's testimony.

If the jury believed Schultz's testimony and determined that no topsoil was needed, or if the jury believed that Stegman's topsoil estimate was not reasonable, then the remaining total cost to restore the 15.29 acres would be $312,043 (i.e., $2,056,461 minus $1,744,418). The contract stated that Columbia would "restore the area disturbed by construction to as near as practical to its original condition." R. 110-15 at PageID 1986. The jury could have further determined that the "area disturbed by construction" was not the 15.29 acres that Nelson argued were disturbed, but rather the 2.46 acres that were subject to temporary and permanent easements. *Id.* at PageID 1988 (noting that Columbia would receive a 1.11 acre permanent easement and a 1.35 acre temporary

workspace easement). Discounting the cost of topsoil, if the cost to restore Nelson's farm was $312,043 for 15.29 acres, then the jury reasonably could have calculated the cost for restoring the 2.46 acres described in the easement as $50,176.51 (i.e. the portion of $312,043 equal to the fraction that 2.46 is of 15.29). That amount is approximately equal to the jury award of $50,000 for breach of contract. Therefore, because the verdict is supported by "some competent, credible evidence," *Anchor*, 94 F.3d at 1021, the district court did not abuse its discretion in denying Nelson's motion for a new trial.

### III.

Nelson next argues that the district court erred in denying her motion for leave to file a fourth amended complaint. "We review de novo the denial of a motion seeking to amend a complaint where the denial is based on the determination that the amended complaint is futile because it would fail under a motion to dismiss." *Cates v. Crystal Clear Tech, LLC*, 874 F.3d 530, 533–34 (6th Cir. 2017) (internal citation omitted). To survive a motion to dismiss, a plaintiff must allege facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

The district court denied Nelson's motion to amend her complaint in order to add claims against Columbia for fraud because the fraud claims would be futile. To succeed in an action for fraud under Kentucky law, Nelson must show that Columbia made: "a) a material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted

upon e) acted in reliance thereon and f) causing injury." *United Parcel Serv. v. Rickert*, 966 S.W.2d 464, 468 (Ky. 1999). The district court held that Nelson could not prove actual damages. Nelson posits, however, that Columbia lied to her about the possibility of the gas line being placed on the opposite side of her property, and that had she known about the pipeline variance, she would not have granted Columbia the easement over the west side of her property.

The district court denied Nelson's motion for leave to amend as futile because it would constitute an impermissible collateral attack on a FERC order that would rob the district court of jurisdiction. *See William Nat. Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 263 (10th Cir. 1989) (holding that judicial review after a valid FERC certificate has been issued "is exclusive in the courts of appeals."). However, we need not address the FERC issue in this appeal, for we may affirm "on any grounds supported on the record even if different from the reasons of the district court." *Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007); *see Miller v. Kent Nutrition Group, Inc.*, 783 F. App'x 604, 606–07 (6th Cir. 2009). We affirm the district court simply because Nelson's proposed fourth amended complaint did not adequately plead damages to sustain an action for fraud.

"[F]raud is actionable only if it results in damage to the complainant." *Hardaway Mgmt. Co. v. Southerland*, 977 S.W.2d 910, 917 (Ky. 1998). In Kentucky, damages in an action for fraud must have been sustained because of the fraud itself. *See Yung v. Grant Thornton, LLP*, 563 S.W.3d 22, 59 (Ky. 2018). What were those separate and distinct damages? Take Nelson's word for it:

> As a result of the false material representations made by Columbia to Plaintiff, Plaintiff has been harmed, including, but not limited to, in at least the following ways: her farm has been largely destroyed, her septic tank and related improvements have been destroyed, her horses can no longer freely graze, her hay and feed bills have increased, and Plaintiff has and continues to suffer from emotional distress.

R. 200-2 at PageID 10231. Those damages, however, stem from Columbia's breach of contract, not the alleged fraud. Nelson has not identified any distinct damages flowing from Columbia's alleged fraud. The damages that Nelson alleges she suffered would have been incurred regardless of whether Columbia made any alleged fraudulent statement because those damages flowed from Columbia's failure to meet its contractual obligations. Because the Fourth Amended Complaint failed to adequately plead an element of a fraud action, the amendment would have been futile. We affirm.

## IV.

Nelson next maintains that the district court erred in instructing the jury on the law of eminent domain in a breach of contract action. We review the legal accuracy of jury instructions de novo. *Smith v. Joy Tech, Inc.*, 828 F.3d 391, 397 (6th Cir. 2016). "Reversal of a judgment on the basis of an erroneous jury instruction may occur 'only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial.'" *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 305, 305–06 (6th Cir. 2011) (internal quotation omitted). Jury instructions are reviewed "as a whole in order to determine whether they fairly and adequately inform the jury of the relevant considerations and provide a sound explanation of the applicable law to aid the jury in reaching its decision." *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999). Therefore, we must find "both an error in jury instructions and resulting prejudice before reversal is justified." *Roberts ex rel Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 787 n.3 (6th Cir. 2003).

The district court's alleged error occurred during voir dire. In describing the basics of the case to the prospective jurors, the court noted:

> [I]f the company needs to put in a new pipeline, the law gives them the right of eminent domain. Briefly summarized, eminent domain means that an entity—city, county, state, federal government, and even some corporations like these utility

companies—they have the right to take people's property where it's condemned. Not destroy it. They have to take it, but it has to be for public purpose.

R. 403 at PageID 16484. But then the district court switched gears and noted:

But anyway, they entered into a contract with Mrs. Nelson that they could cross . . . . that they would cross their property; and if they did any damage, they would restore it to the extent practical. That's part of the contract.

So they did do some restoration, but she said they didn't do as much as was practical. And that's what the case is about; did they do what they should have done, or is she entitled to damages to repair what they didn't do.

*Id.* at PageID 16485. The district court made no further mention of eminent domain after the jury was seated.

In the eight-day jury trial there was no other mention by the district court of the law of eminent domain. Rather, over those eight days, the focus of the testimony was Nelson's breach of contract and emotional distress claims, not eminent domain. Likewise, the final jury instructions said nothing about eminent domain.

Nelson maintains that the eminent domain instruction was prejudicial to her because, if the jury believed this was a condemnation case, then the jury could have believed that it was giving her due consideration for her condemned property. We disagree. Over eight days, the jury heard testimony and viewed exhibits—including the contract where Nelson was duly compensated for the easement—that made it very clear that this was a breach of contract case, not a condemnation action.

Even if the district court's conjecture about eminent domain was erroneous, we still must find the instructions, as a whole, to be "confusing, misleading, and prejudicial" to order a new trial. *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 273–74 (6th Cir. 2009). Reading the trial court's instructions as a whole, we conclude that they adequately informed the jury of relevant considerations and provided an adequate basis for its decision. Although the

district court may have erroneously discussed the law of eminent domain during voir dire, when viewed as a whole, we cannot say that the instructions were confusing, misleading, or prejudicial in terms of the jury's ultimate task of assessing Columbia's liability. *See Ventas*, 647 F.3d at 305. We therefore affirm.

## V.

Nelson next maintains that the district court erred by bifurcating Michels from trial and then granting its motion for summary judgment. We address each contention in turn below.

### A. Bifurcating Michels from Trial

We review a district court's decision to bifurcate a trial for abuse of discretion. *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 481 (6th Cir. 2007) (citing *Wilson v. Morgan*, 477 F.3d 326 (6th Cir. 2007)). "The decision whether to try issues separately is within the sound discretion of the court . . . . It follows, therefore, that a decision to try an issue separately will be affirmed unless the potential for prejudice to the parties is such as to clearly demonstrate an abuse of discretion." *Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.*, 76 F.3d 743, 747 (6th Cir. 1996).

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial . . . ." Fed. R. Civ. P. 42(b). At the final pretrial hearing, counsel for Michels explained that instructions regarding the different measures of damages for Columbia and Michels—namely, that Columbia could only be held liable for contractual damages whereas Michels might also be held liable in tort—would confuse the jury. The district court sua sponte ordered a separate trial for Michels. R. 311 at PageID 14064–68. The district court "reiterated that this is a contract action and that several items of evidence that might be admissible in a tort action are not admissible in a contract action." R. 246 at PageID 12413–15. The court concluded

10

that Michels "would be an unwarranted distraction from the main issue in the case, which is restoration cost of plaintiff's pasture in the claimed amount of some two million dollars." *Id.* Further, Nelson cannot show that, in the end, she was prejudiced by the decision to bifurcate Michels from trial. She claims that she was prejudiced because, by bifurcating Michels, she was prohibited from pursuing punitive damages against Michels. But because, as noted below, Nelson's claims against Michels are actually for breach of contract, she is not entitled to punitive damages as a matter of law. Ky. Rev. Stat. § 411.184(4) ("In no case shall punitive damages be awarded for breach of contract.").

Given the complexity of this case, the court's motive to prevent jury confusion, and the need for judicial economy, the district court's decision to bifurcate Michels from trial was not an abuse of discretion.

## B. Summary Judgment in Favor of Michels

We review a district court's grant of summary judgment de novo. *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019) (internal quotations omitted). Summary judgment is appropriate when "no genuine dispute as to any material fact" exists and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Peffer v. Stephens*, 880 F.3d 256, 262 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). At the summary judgment stage, "the evidence is construed and all reasonable inferences are drawn in favor of the nonmoving party." *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013) (citing *Hawkis v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008)).

The district court held that, because Nelson's negligence and trespass claims arose from Michels's performance of its contract with Columbia, the claims fail as a matter of law. Under Kentucky law, "one who is not a party to the contract or in privity thereto may not maintain an action for negligence which consists merely in the breach of the contract." *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 791 (Ky. 2017) (quoting *Presnell Constr. Managers, Inc. v. EH Constr.*, 134 S.W.3d 575, 579 (Ky. 2004)). We find no error in the district court's judgment. Here, Nelson's tort claims against Michels—that it negligently blew wood chips off the right of way—are merely contract claims repackaged as tort claims. Michels had a contractual duty to Columbia to dispose of the wood chips. Nelson has identified no duty on Michels's part independent of its contractual duties to Columbia. Therefore, Nelson cannot maintain an action for negligence against Michels based on the performance of its contract with Columbia. We affirm.

## VI.

Nelson next argues that the district court erred in declining to impose discovery sanctions on Columbia. She alleges that Columbia concealed relevant documents and provided false and misleading responses to requests for admissions that she argues were relevant to the fraud claims she intended to plead in her fourth amended complaint.

We review a district court's decision on whether and how to implement sanctions for discovery violations for abuse of discretion. *Flagg v. City of Detroit*, 715 F.3d 165, 177 (6th Cir. 2013). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law." *Norfolk Southern Ry. Co.*, 775 F. App'x at 186 (quoting *United States v. Arny*, 831 F.3d at 730). A district court has not

12

abused its discretion unless we are left with "a definite and firm conviction that the trial court committed a clear error of judgment." *Anchor*, 94 F.3d at 1021.

A party who does not comply with the discovery rules may avoid sanction if "there is a reasonable explanation of why Rule 26 was not complied with or [if] the mistake was harmless." *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015) (internal quotation omitted). In order to assess whether a party's omitted disclosure was justified or harmless, we analyze five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id*. at 748 (internal quotation omitted). The district court[2] analyzed Nelson's motion for discovery sanctions under this standard and concluded that sanctions were not warranted. We see no error in the district court's application of the controlling law. We affirm.

## VII.

On cross-appeal, Columbia contends that the district court erred in denying its motion for judgment as a matter of law on the damages for emotional distress. We review a district court's decision to deny a motion for judgment as a matter of law de novo. *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1065 (6th Cir. 2015). Because emotional distress damages for breach of contract are not available under Kentucky law, we reverse the jury award.

The district court denied Columbia's motion for a judgment as a matter of law because it found sufficient proof of emotional distress to warrant damages. However, the court based that conclusion on the premise that Kentucky courts permit recovery of damages for emotional distress for breach of contract. It noted that "Kentucky state courts almost always follow the Restatement

---

[2] The magistrate judge issued a report and recommendation on this issue, which the district court adopted.

(Second) of Contracts and, in the opinion of this Court, would adopt the section upon which this award was based." R. 382 at PageID 16315.

When sitting in diversity, federal courts are required to apply the substantive law of the state in which they reside. *Kentucky Commercial Mobile Radio Serv. Emergency Telecomm. Bd. V. TracFone Wireless, Inc.*, 712 F.3d 905, 912 (6th Cir. 2013); *see Erie R. R. v. Tompkins*, 304 U.S. 64, 78 (1938). No court in Kentucky has adopted the section of the restatement on which the district court upheld the emotional distress damages award. However, for nearly a century, it has been the law of Kentucky that "in actions for breach of contract, damages for mental suffering caused by the breach are not recoverable." *Combs v. S. Bell Tel. & Tel. Co.*, 38 S.W.2d 3, 5 (Ky. 1931); *cf. Hogan v. Long*, 922 S.W.2d 368, 371 (Ky. 1995) (internal quotation omitted) ("The measure of damages for breach of contract is that sum which will put the injured party into the same position he would have been in had the contract been performed.").

Because damages for emotional distress are not available under Kentucky law, we reverse the district court's decision to deny Columbia's motion for judgment as a matter of law.

## VIII.

For the foregoing reasons, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** with instructions to enter judgment as a matter of law to Columbia on the emotional distress damages claim.

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment.** I concur in the judgment.