NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0352n.06

No. 14-5939

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 11, 2015
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MICHAEL SCOTT WARD, | ) | |
| WEDO FUNDRAISING, INC., d/b/a | ) | |
| FEREDONNA COMMUNICATIONS, and | ) | ON APPEAL FROM THE |
| PRINTVENTURE, INC., d/b/a FEREDONNA | ) | UNITED STATES DISTRICT |
| COMMUNICATIONS, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| Plaintiffs-Appellants, | ) | |
| | ) | OPINION |
| v. | ) | |
| | ) | |
| KNOX COUNTY BOARD OF EDUCATION and | ) | |
| KNOX COUNTY, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

**Before: GILMAN, ROGERS, and SUTTON, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** Since 1989, Knox County children have sold coupon books as part of an annual fundraising campaign for their county's schools. Michael Scott Ward and Feredonna Communications (collectively, Feredonna) won the contract to print Knox County's coupon books in 1994. The relationship between Feredonna and Knox County lasted until 2009, when Knox County switched to another, lower bidder.

In 2011, Feredonna filed suit against both the Knox County Board of Education and Knox County, alleging that Knox County's coupon books infringe on the trademark, trade dress, and copyright of Feredonna's coupon books. The district court denied Feredonna's requests for a temporary restraining order (TRO) and a preliminary injunction, and eventually granted Knox

County's motion for summary judgment. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.    BACKGROUND

### A.    Factual background

The coupon-book fundraising concept spread to Knox County in 1989. Coupons entitle the purchaser to receive discounts on a variety of merchants' goods and services, while sales of the coupon books benefit the county's schools. For the first few years, the coupon-book program was called "Kids First" and then "Class Coupons." Knox County changed the name to "School Coupons" for the 1993-94 school year, with the coupon book for that year also using the title "Head of the Class."

Feredonna did not become involved with Knox County's coupon-book program until 1994, when Feredonna won its first contract. The resulting coupon book for the 1994-95 school year retained the name "School Coupons." Feredonna continued to print coupon books for Knox County, pursuant to various bid documents, from 1994 through 2009. Besides printing, Feredonna also designed and produced the coupon books and recruited merchants from outside of Knox County.

On September 29, 1997, Feredonna filed a trademark application for "School Coupons" as a service, covering "charitable fund raising services on behalf of schools effected through the distribution of books containing coupons which entitle the holders to receive discounts on dining, hotels, travel, consumer merchandise, movies and other leisure activities." The U.S. Patent and Trademark Office (PTO) rejected the mark on July 9, 1998 and refused its registration on the Principal Register because the mark was deemed "merely descriptive" under 15 U.S.C.

§ 1052(e)(1). Feredonna subsequently amended its application to register the mark on the Supplemental Register instead of the Principal Register, which the PTO allowed on May 11, 1999.

When the registration became effective, Feredonna began including the ® symbol whenever it used the "School Coupons" mark. Feredonna also began claiming copyright protection for the design, format, layout, and contents of the School Coupons books by 1998, and registered its copyright for the 2009-2010 School Coupons coupon book in 2009. The "School Coupons" trademark was used by Feredonna in connection with Knox County's annual coupon-book campaign for every year that the mark was registered.

At the conclusion of the 2009 coupon-book campaign, Feredonna's contract with Knox County for the printing of the coupon books expired. Knox County then rebid the coupon-book project, and Walsworth Publishing Company, Inc. (Walsworth) won the contract with a significantly lower bid. In February 2010, Knox County sent a letter to those merchants who had previously participated in the coupon-books program to announce the "re-branding" of the program from "School Coupons Campaign" to "Knox County Schools Coupon Book." The coupon book for the 2010 campaign was titled "The Original Knox County Schools Coupon Book Established 1989."

## B. Procedural background

On September 6, 2011, Feredonna filed suit against Knox County, Walsworth, and two county employees, asserting claims of trademark, trade-dress, and copyright infringement. Feredonna sought a TRO, a preliminary injunction, permanent injunctive relief, and damages. The district court held a hearing on September 23, 2011 regarding Feredonna's requests for a TRO

and a preliminary injunction.   Six days later, the court denied the requests, finding that Feredonna had demonstrated neither a likelihood of success on the merits nor any irreparable harm.

Walsworth and the county employees were voluntarily dismissed as defendants in 2012, leaving Knox Country as the sole defendant.   In April 2014, Feredonna and Knox County filed competing motions for summary judgment.   Three months later, the district court denied Feredonna's motion, granted Knox County's motion, and dismissed all of Feredonna's claims. Feredonna has timely appealed to this court.

## II.   ANALYSIS

### A.      Standard of review

We review de novo a district court's grant of summary judgment.  *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014).   Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   In reviewing a grant of summary judgment, we must draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Hamilton v. Starcom Mediavest Grp., Inc.*, 522 F.3d 623, 627 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).   The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**B.** **The district court properly granted summary judgment for Knox County on Feredonna's trademark infringement claim**

Feredonna argues that Knox County infringed on Feredonna's "School Coupons" trademark, in violation of the Lanham Act. *See* 15 U.S.C. §§ 1114, 1125. The Lanham Act protects against infringement of both registered and unregistered marks. *DeGidio v. West Grp. Corp.*, 355 F.3d 506, 509 (6th Cir. 2004) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). Before we can reach the issue of whether there has been any infringement, however, Feredonna must first establish ownership of "a valid and legally protectable trademark." *See id.* If the mark in question is deemed not protectable, our analysis "ends there." *T. Marzetti Co. v. Roskam Baking Co.*, 680 F.3d 629, 633 (6th Cir. 2012).

### 1. The "School Coupons" mark is descriptive

"Only those marks that are 'distinctive' as a matter of law are accorded trademark protection." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 512 (6th Cir. 2007). On a scale of increasing distinctiveness, a mark can be (1) generic; (2) descriptive; or (3) suggestive, arbitrary, or fanciful. *Two Pesos*, 505 U.S. at 768. The latter category of marks is "inherently distinctive" and entitled to trademark protection because the intrinsic nature of the mark serves to identify a particular source of a product. *Id.*; *Leelanau*, 502 F.3d at 512. On the other hand, generic marks—those that identify the genus of which a particular product is a species—are never entitled to trademark protection. *Leelanau*, 502 F.3d at 513 & n.4.

Descriptive marks, which describe "the qualities or characteristics of a good or service," *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985), fall in the middle and are entitled to protection only if they develop a "secondary meaning," *Leelanau*, 502 F.3d at 513 (quoting *Two Pesos*, 505 U.S. at 769). Secondary meaning indicates that a mark "has come

through use to be uniquely associated with a specific source" of the product, rather than the product itself. *DeGidio*, 355 F.3d at 513 (quoting *Two Pesos*, 505 U.S. at 766 n.4) (internal quotation marks omitted). The district court found that the "School Coupons" mark was descriptive but had not acquired a secondary meaning.

Feredonna, in an attempt to avoid the descriptive-mark category, argues that the registration of the "School Coupons" mark in the Supplemental Register, its own continuous use of the mark, and Knox County's subsequent acknowledgement of Feredonna's ownership entitle the mark to protection. In its reply brief, Feredonna further claims that the "School Coupons" mark is inherently distinctive because, although "school coupons" generally refer to "coupons that one might use to pay for school," the "School Coupons" mark is "a fundraising product for the benefit of schools."

But Feredonna places too much weight on the mark's placement on the Supplemental Register. Unlike registration on the Principal Register, registration on the Supplemental Register does not entitle Feredonna to a presumption of valid trademark ownership. *Cf. Leelanau*, 502 F.3d at 513 ("Registration of a mark on the Principal Register of the USPTO creates a rebuttable presumption that a trademark is valid, that is, either inherently distinctive or descriptive with secondary meaning, and therefore, protectable under federal trademark law." (citing 15 U.S.C. § 1115(a))). In fact, amending an application for registration on the Principal Register to the Supplemental Register—as Feredonna did here—"is a concession that the term is not inherently distinctive." 3 *McCarthy on Trademarks and Unfair Competition* § 19:43 (4th ed. 2015).

Both the district court and the PTO determined that Feredonna's trademark is descriptive. "[A] trademark is merely descriptive if it describes one, or more, of the following: the intended

purpose, function or use of the goods[;] the class of users of the goods; a desirable characteristic of the goods; or the end effect upon the user." *DeGidio*, 355 F.3d at 510 (quoting *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1190 (6th Cir. 1988)) (internal quotation marks omitted). The PTO explained that "School Coupons" is highly descriptive "because it describes a feature of the services, namely coupons" and "the intended beneficiary of the services, namely, schools." We therefore agree with the district court's conclusion that "School Coupons" is a descriptive mark.

### 2. The "School Coupons" mark has not acquired a secondary meaning

Marks that are descriptive are protected only if they develop a secondary meaning. *Leelanau*, 502 F.3d at 513. "A descriptive mark achieves secondary meaning when in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product." *Id.* (quoting *Inwood Labs, Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)) (internal quotation marks omitted). To determine whether a descriptive mark has acquired a secondary meaning, we look to seven factors, with no single factor being determinative: (1) direct consumer testimony; (2) consumer surveys; (3) exclusivity, length, and manner of use; (4) amount and manner of advertising; (5) amount of sales and number of customers; (6) established place in the market; and (7) proof of intentional copying. *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 311-12 (6th Cir. 2001).

Feredonna, relying solely on its amended complaint, claims that it used the "School Coupons" mark "exclusively and consistently for approximately 20 years." Knox County does not dispute this assertion, and the report of its own expert witness shows that Feredonna used the "School Coupons" mark from the 1994-95 campaign year through the 2009-10 campaign year. Viewing the evidence in the light most favorable to Feredonna, the third factor—exclusivity,

7

length, and manner of use—supports a finding of secondary meaning. But, unfortunately for Feredonna, the other six factors do not.

Crucially, Feredonna has provided no direct consumer testimony or consumer surveys. Although the lack of survey evidence is not fatal to Feredonna's claim, consumer surveys are "the most direct and persuasive evidence" of secondary meaning. *Herman Miller*, 270 F.3d at 312. The evidence in the record concerning the remaining factors is scant. Feredonna again cites only its amended complaint for its assertions that the "coupon book campaign regularly received media attention and advertising" and that it "sold well over 2,300,000 coupon books."

But as Knox County points out, the record contains no advertisements or media reports. And the claim of 2,300,000 coupon books sold appears to refer to the number of coupon books that *Knox County sold* between the years 1994 and 2009. The contracts between Feredonna and Knox County called for Feredonna to print the coupon books, not to sell them.

To prove intentional copying, Feredonna points to a February 5, 2010 letter from Knox County to the surrounding business community and to a "2010 Merchant Participation Application." The letter states, in relevant part, as follows:

> The Knox County School System is re-branding the coupon book program for 2010. The product that has been known as the School Coupons Campaign will now be known as the Knox County Schools Coupon Book. Our book will be sold exclusively within the Knox County School System. It is a product produced by Knox County Schools for our district schools.
>
> You may continue to see School Coupons in this market, as the company that holds the rights to that name produces a coupon book and discount card by the same name that will be sold in surrounding counties. Neither of these products has been approved as a fundraising program within the Knox County School System.

Feredonna contends that Knox County "presented [the] new product as if it were the established School Coupons® product owned by Feredonna." And Feredonna argues that the

2010 Merchant Participation Application is a solicitation for past participants to "Repeat Current Offer," thus "suggesting that the Knox County Schools product was a continuation of the School Coupons® product."

But even construing the above two documents in the light most favorable to Feredonna, they do not support an inference that Knox County intentionally copied the "School Coupons" mark. Indeed, the letter explicitly distinguishes the new Knox County Schools Coupon Book from "School Coupons." The 2010 Merchant Participation Application, moreover, includes the Knox County Schools Coupon Book logo at the top of the application while making no mention of the "School Coupons" mark. Simply referring to the "School Coupons" mark or program while discussing the Knox County Schools Coupon Book does not prove that Knox County copied Feredonna's mark, let alone that it did so with an intent to copy.

Finally, Feredonna relies on the report of its expert witness to argue that, given Feredonna's history and continued usage of the "School Coupons" mark, there is a presumption that the mark has taken on a secondary meaning. But no other evidence supports this conclusory claim. Feredonna argues that this supposed presumption is consistent with the Lanham Act's presumption of secondary meaning for marks that have been used continuously in commerce for more than five years. *See* 15 U.S.C. § 1052(f).

Section 1052(f), however, concerns the registration of trademarks on the *Principal Register* and states that a presumption of distinctiveness *may* be applied after five years of continuous use. *See id.* Moreover, as Knox County points out, the PTO's Trademark Manual of Examining Procedure states that "[i]f the mark is highly descriptive . . . , the statement of five

9

years' use alone will be deemed insufficient to establish acquired distinctiveness." *Trademark Man. of Exam. Proc.* 1212.05(a) (Apr. 2014 ed.).

Only one of the seven factors that this court looks to in determining whether a descriptive mark has acquired a secondary meaning (exclusivity and length of use) supports Feredonna's claim that the "School Coupons" mark has done so. Because "[n]o single factor is determinative," *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 312 (6th Cir. 2001), evidence that Feredonna exclusively and continuously used the "School Coupons" mark for many years is not enough to overcome the lack of evidence regarding the other six factors, and is insufficient in our opinion for a jury to reasonably find for Feredonna on the secondary-meaning issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (noting that for a plaintiff to avoid summary judgment for the defendant, "there must be evidence on which the jury could reasonably find for the plaintiff").

We therefore conclude that the "School Coupons" mark is not entitled to trademark protection. And "because we have concluded that the mark in this case is not protectable, we need not address the likelihood of confusion." *See T. Marzetti Co. v. Roskam Baking Co.*, 680 F.3d 629, 634-35 (6th Cir. 2012). In sum, the district court did not err in granting summary judgment for Knox County on Feredonna's trademark infringement claim.

**C.** **The district court properly granted summary judgment for Knox County on Feredonna's claim of trade-dress infringement**

Feredonna next claims that Knox County infringed on the trade dress of the "School Coupons" coupon books, in violation of 15 U.S.C. § 1125(a). "Trade dress refers to the image and overall appearance of a product. It embodies that arrangement of identifying characteristics or decorations connected with a product, whether by packaging or otherwise, that makes the

source of the product distinguishable from another and promotes its sale." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002) (internal quotation marks and alterations omitted).

Trade dress "may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Id.* (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n.1 (1992)). To prevail on a trade-dress infringement claim, a party must prove that the trade dress in question is entitled to protection—in other words, that it is (1) distinctive, and (2) primarily nonfunctional—and then that (3) the trade dress of the competing product is confusingly similar. *Id.* (citing *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000)).

Like a trademark, trade dress is either inherently distinctive or may acquire distinctiveness through secondary meaning. *Id.* at 635 (citing *Inwood Labs, Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 851 n.11 (1982)). Product design or configuration, as opposed to product packaging, is never inherently distinctive, and is protectable only if it has acquired a secondary meaning. *Samara Bros.*, 529 U.S. at 216 ("[I]n an action for infringement of unregistered trade dress . . . , a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning."); *Abercrombie*, 280 F.3d at 637 ("[N]o product configuration can meet the distinctiveness requirement of the Lanham Act by a showing of inherent distinctiveness but must rely instead on acquired distinctiveness, *i.e.,* a showing of secondary meaning."); *see also Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 503 (6th Cir. 2013) (laying out the elements of a product-design trade-dress infringement claim). This is because "a product's configuration—unlike its packaging—is inextricably tied to the product itself, such that even the

most unusual features of a product's design cannot automatically identify which producer crafted the product because consumers are not predisposed to treat design features as an indication of source." *Abercrombie*, 280 F.3d at 637.

Feredonna argues that its trade dress is inherently distinctive, but bases its claim largely on the style and "design" of the coupon books, which must acquire a secondary meaning to be distinctive. *See Samara Bros.*, 529 U.S. at 215. On appeal, Feredonna asserts trade-dress protection based on the size and shape of the coupon booklets, the design of the front cover (which includes the use of a student's photograph, the listing of sponsors, and the color), and the "texture, quality, and weight" of the booklets' cover and interior paper. But the size, shape, and feel of the coupon books all relate to their design, rather than to their packaging, because such features are "inextricably tied to the product itself." *See Abercrombie*, 280 F.3d at 637.

The cover, on the other hand, could be construed as either packaging or design, depending on whether the purchaser buys the coupon book to support the county's schools or to make use of the coupons inside. *See Samara Bros.*, 529 U.S. at 215 ("[A] classic glass Coca-Cola bottle, for instance, may constitute packaging for those consumers who drink the Coke and then discard the bottle, but may constitute the product itself for those consumers who are bottle collectors, or part of the product itself for those consumers who buy Coke in the classic glass bottle, rather than a can, because they think it more stylish to drink from the former."). In this instance, we will follow the Supreme Court's directive to "err on the side of caution and classify ambiguous trade dress as product design, thereby requiring secondary meaning," *id.*, with regard to the coupon book's cover.

We use the same seven factors to analyze secondary meaning in a trade-dress case as in a trademark case. *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 311-12 (6th Cir. 2001). On appeal, Feredonna cites the identical evidence in support of its trade-dress claim as it does its trademark claim, arguing that it "used the trade dress in commerce exclusively and consistently for over 15 years," that the "School Coupons" campaign "regularly received media attention and advertising," and that it "sold well over 2,300,000 coupon books." But the lack of supporting evidence as discussed above is just as telling in the trade-dress context.

Feredonna separately notes Knox County's "mimicry" of Feredonna's trade dress, pointing to the "striking similarities" between the covers of both parties' coupon books. But mere similarity between the two covers does not support an inference of intentional copying. And even if this court were to assume that Knox County intentionally copied Feredonna's trade dress, "it is only one of many considerations in that test and does not alone establish secondary meaning." *See Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 419 (6th Cir. 2006).

Feredonna, in sum, has failed to establish that the disputed trade dress has acquired a secondary meaning. Because this deficiency makes Feredonna's trade dress unprotectable, we conclude that the district court appropriately granted summary judgment for Knox County on the trade-dress infringement claim.

**D.    The district court properly granted summary judgment for Knox County on Feredonna's copyright infringement claim**

Feredonna, in addition to alleging trademark and trade-dress infringement, claims that Knox County infringed upon Feredonna's copyright for the "School Coupons" coupon book. To prevail on a copyright infringement claim, a plaintiff must show (1) ownership of a valid copyright, and (2) that the defendant copied protectable elements of the work. *Lexmark Int'l, Inc.*

13

*v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Feredonna registered its copyright for the 2009-2010 "School Coupons" coupon book in August 2011, which presumptively establishes the first prong of its copyright claim. *See Lexmark*, 387 F.3d at 533-34.

"The second prong tests whether any copying occurred (a factual matter) and whether the portions of the work copied were entitled to copyright protection (a legal matter)." *Id.* That is, even if we were to assume that Feredonna owns a valid copyright, "not all copying is actionable"; Feredonna must still prove "copying of constituent elements of the work *that are original.*" *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003) (quoting *Feist*, 499 U.S. at 361) (internal quotation marks omitted) (emphasis in original). "The *sine qua non* of copyright is originality. . . . Original . . . means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist*, 499 U.S. at 345 (citing 1 M. Nimmer & D. Nimmer, *Copyright* §§ 2.01[A], [B] (1990)).

Feredonna focuses its copyright claim on the "new advertising copy" that it created from "raw offer verbiage from merchants," pointing to both the language and format of the copy. Although Feredonna states in its reply brief that Knox County copied Feredonna's "advertising language," the affidavit upon which Feredonna relies reflects that such "language" refers to Feredonna "standardiz[ing] the *style* for the wording of coupon offers, merchant addresses, and coupon valuations." (Emphasis added.) By its own admission, Feredonna did nothing but change the style and format of the language submitted by merchants, which this circuit has held is not enough to reflect the requisite originality. *See M. M. Bus. Forms Corp. v. Uarco, Inc.*,

14

472 F.2d 1137, 1139-40 (6th Cir. 1973) (holding that a business form for television servicemen was not original because it amounted to "nothing more" than "a mosaic of the language appearing on other existing forms allready [sic] in the public domain"). The court found that, "[e]ven though word arrangements ha[d] been altered, they [we]re at best merely a paraphrasing of earlier forms." *Id.* at 1140. That is exactly the case here.

Moreover, even if we were to assume that Feredonna's advertising copy is original, the evidence in the record does not create a genuine dispute of material fact regarding whether Knox County copied Feredonna's booklets. Feredonna's own expert witness concluded that there were "too many differences and not enough similarities[] to sustain a claim of substantial similarity to support a claim of copyright infringement." Focusing on the interior content of the booklets, Feredonna's expert witness also found no similarities: "The first pages include a directory, but both Plaintiff['s] and Defendant's design[s] are different in their font, type and size, and overall arrangement. Subsequent pages, containing the coupons[,] are different in color, font, graphic art, and text." We therefore conclude that the district court appropriately granted summary judgment for Knox County on Feredonna's copyright infringement claim.

**E.     Feredonna's request for preliminary injunctive relief**

Finally, Feredonna appeals the district court's denial of its motion for a preliminary injunction, claiming that the court "committed a series of errors, both in fact and law." Because we affirm the district court's grant of summary judgment against Feredonna on all grounds, we need not review the denial of the preliminary injunction.

## III.   CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.